THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GREER v. CLARKE & COURTS, *a corporation.*

(Filed September 2, 1902.)

1. DE FACTO MUNICIPAL CORPORATIONS—Powers. Greer county, Texas, from the date of its organization as a county government in 1886, until it was transferred to Greer county, Oklahoma, by act of congress of May 4, 1896, was a de facto municipal corporation and its officers were de facto officers, invested with full power to create an indebtedness for lawful, corporate purposes, and to levy and collect taxes for the payment thereof.

2. SAME—Successors Liable for Valid Debts. Where a municipal, or quasi municipal corporation is dissolved and a new corporation is created embracing the same territory and substantially the same people, and the same taxable property, and organized for the same general purposes, and holding by transfer, without consideration, the taxable property of the former, it is the successor of the old corporation, and is liable for its valid debts, in the absence of an express provision for their payment otherwise.

3. SAME—Warrant Indebtedness—Can be Avoided, When. Where the warrant is issued by the officers of a municipal or quasi municipal corporation, and the creditor accepts the same relying on the ordinary modes of taxation to pay said obligation, the municipality cannot be heard to say, on an action to enforce the payment thereof, that it is barred by the statute of limitations, without first pleading and proving that it has provided a fund for the payment of such indebtedness.

4. SAME—Statute of Limitations Can be Pleaded, When. Hence a county cannot plead the statute of limitations to an action against it to enforce an obligation payable from a particular fund, without first showing that it has provided such fund.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before Benj. F. Burwell, Trial Judge.*

J. A. Powers, C. M. Thacker, John W. Shartel, Frank Wells, M. C. Spitler and J. R. Keaton, for plaintiff in error.

Duncan G. Smith, for defendant in error.

### STATEMENT OF FACTS.

For a number of years prior to 1896, there was a dispute between the state of Texas and the United States as to the boundary line between Texas and Oklahoma, each party claiming the territory now embraced in Greer county, Oklahoma. In August, 1886, the inhabitants of said territory organized the same into a county under the laws of the state of Texas, and named it Greer county, Texas; and thereafter said county was recognized by the state of Texas as a legally organized county of said state, and the state of Texas continued to exercise jurisdiction and sovereignty over said county until on or about the 16th day of March, 1896, when it was decided by the supreme court of the United States that the territory comprising said Greer county rightfully belonged to the United States, and not to the state of Texas. (*United States v. State of Texas,* 162 U. S. 1.)

It appears from the record that from 1889 to 1892 inclusive, Greer county, Texas, became indebted to the defendant in error, Clarke and Courts, for stationery furnished to said county, and as an evidence thereof, issued twelve warrants payable out of what was known as the "third class fund."

On May 4, 1896, Congress passed the following act in reference to Greer county:

"Be it enacted by the senate and the house of representatives of the United States of America in congress asembled, that the portion of the Territory of Oklahoma bounded by the north fork of the Red River and the state of Texas, heretofore known as Greer county, Texas, be, and the same is hereby established as Greer county, of Oklahoma, with Mangum as the county seat. The present

county officers of said county shall be continued in office until the first Tuesday of November, eighteen hundred and ninety-six, or until their successors are elected and qualified, at an election to be held on the said first Tuesday of November, eighteen hundred and ninety six, as provided by the laws of the Territory of Oklahoma. All provisions of law applicable to the organization and government of counties in Oklahoma shall forthwith be applied by the proper officers thereof to said Greer county, the intention being to provide without delay, the same organized government for said Greer county, as for other counties of Oklahoma. All public buildings and property of every description heretofore belonging to Greer county, Texas, or used in the administration of public business thereof, is hereby declared to be the property of said Greer county, Oklahoma, and the officers thereof shall, as soon as appointed take immediate charge and custody thereof; and all school property in said county shall become the property of the respective school districts in which the same are situated.

"Sec. 2. That all proceedings and actions of every kind in or before the several courts and officers of Greer county, Texas, shall have the same force and affect as if the said courts and officers of Greer county, Texas, had been legally authorized courts and officers of the United States or of the Territory of Oklahoma, and the courts of said territory having jurisdiction of similar matters shall make and issue all orders and writs necessary to enforce the orders, decrees, and final judgments of said courts and officers of Texas.

"Sec. 3. That all suits which were pending in the several courts of said Greer county, Texas, on March sixteenth, eighteen hundred and ninety six, as shown by the dockets thereof, shall be entered upon the dockets of the courts of Oklahoma having jurisdiction of like cases, and the same shall proceed as if they had been brought in said courts of Oklahoma. Where an appeal or writ of error has

been taken from a judgment in any civil or criminal case rendered by any of said courts of Greer county, Texas, to any other court of Texas, the judgment of such appellate court shall be binding upon all parties to such case, and upon the filing of a certified copy thereof, in the court of Oklahoma having jurisdiction of like cases, it shall be the duty of such court to enter the same upon its minutes and proceed in said action in all respects as though it had rendered the original judgment therein. All rights in the cases mentioned in this section shall be determined by the law of Texas applicable to the act or transaction involved, and the courts shall take judicial notice of such law for that purpose. When any judgment affirmed by any such appellate court provides for imprisonment, such imprisonment shall be in such place as the proper court of Oklahoma shall designate.

"Sec. 4. That all records, minutes and files of any of the courts and officers mentioned in section 2 of this act shall be preserved and kept by the proper courts and officers of Oklahoma, and they, or certified copies thereof, shall be competent evidence. All written contracts, conveyances, mortgages, liens, or other instruments which have been heretofore filed or recorded in said Greer county in conformity with the laws of Texas, shall be held and considered to have been legally filed or recorded, and it shall not be necessary again to file or record them. And all interest, right, titles, and estates, conveyed, limited, encumbered, or in any wise affected by any contract, lien, conveyance, mortgage or other instrument, or by any judgment or decree of any court of Texas of competent jurisdiction, and all judgments of said courts, civil and criminal, prior in date to March sixteenth, eighteen hundred and ninety six, shall have the same force and effect, in all respects, as if said Greer county had legally formed a part of the territory of the state of Texas up to March sixteenth, eighteen hundred and ninety six, and had upon that

date been lawfully ceded by Texas to the United States with a reservation and ratification of all existing rights and liabilities according to the laws of Texas.

"Approved May 4, 1896." (29 U. S. Statutes at Large, 113.)

This action was brought in the district court of Greer county, Oklahoma, on the 4th day of September, 1889, by the defendant in error, Clarke and Courts, against the board of county commissioners of Greer county, Oklahoma, to recover upon twelve warrants issued by Greer county, Texas, during the years 1889 and 1892, inclusive, for stationery and supplies furnished by the said Clarke and Courts to Greer county, Texas, and the venue changed by agreement to Oklahoma county. It is alleged in the plaintiff's petition, and is not disputed, that the warrants sued upon in this action immediately after their issuance, were registered, and have never been paid in whole or in part, and that there were no funds at any time in the treasury of Greer county to pay said warrants, and that no provision was ever made by Greer county, Texas, by virtue of the taxing power or otherwise, to provide for a fund to pay said indebtedness, or any portion thereof. And it is further alleged and undisputed in the petition that said warrants were presented to the treasurer of Greer county, Oklahoma, for payment on the twelfth day of June, 1889, and payment by said treasurer refused; that Greer county, Oklahoma, has also failed and refused to make any provision for the payment of said indebtedness, or any part thereof. To the amended petition of the plaintiff, the defendant, the board of county commissioners of Greer county, Oklahoma, interposed a general demurrer, on the

ground that said petition failed to state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. The district court overruled the demurrer. And thereupon the cause was tried on the following agreed statement of facts:

"Suit pending in the District Court of Greer County, in the Territory of Oklahoma, No. 240.

"CLARKE AND COURTS v. BOARD OF COUNTY COMMISSIONERS OF GREER COUNTY.

"It is agreed by counsel for plaintiff and defendant in the above entitled and numbered cause, as follows:

"1. That defendant waives attaching and filing the warrants sued on with plaintiff's petition, or copy of one only, with recitation in petition as to character of the others, covering in general terms descriptions of the several warrants respectively.

"2. That plaintiff is the owner and holder of the warrants sued upon.

"3. That Greer county was created by the act of the legislature of the state of Texas, comprising the now territory of defendant county, and thereafter, to-wit, on the 10th day of July, 1886, was duly organized as a Texas county, and maintained its organization as such until the Greer county case was decided by the supreme court of the United States, March 16, 1896.

"4. That during its existence as an organized county in Texas, the warrants sued on were regularly and legally issued by order of the legally constituted authority of said county, acting under the laws of the state of Texas, and registered, and were valid legal obligations of said Greer county, Texas, at the date of their issuance, except that defendant does not agree that interest provided for is legal, and no provision was ever made by Greer county, Texas, for the payment of same by tax, levy or otherwise,

and payment of same was never refused, and no provision. has been made by Greer county, Oklahoma, through its board of county commissioners or otherwise, for payment of same or any part thereof.

"5. This agreement, except the first paragraph thereof, which relates to the matter of pleading, is not to be considered by the court in passing upon the demurrers interposed by the defendant, questions of law to be first disposed of.

"BROWNING AND MADDEN AND DUNCAN G. SMITH,
"Attorneys for Plaintiff.

"J. F. MATTHEWS, County Attorney, and J. A. POWERS,
"Attorneys for Defendant."

The following stipulation was also entered into between the parties and submitted to the court at the trial of said cause:

"Territory of Oklahoma, County of Oklahoma, ss.
"CLARKE AND COURTS, PLAINTIFF,
v.
"GREER COUNTY, DEFENDANT.

"In the District Court of Oklahoma County. March 14, 1901.

"In this cause pleading the statutes of the state of Texas by both plaintiff and defendant or either of them is hereby expressly waived, and it is agreed that the court take judicial knowledge of the laws of the state of Texas in the trial and disposition of this cause, upon demurrer and upon the merits.

"DUNCAN G. SMITH,
"Attorney for Plaintiff.

"CHAS. M. THACKER, Co. Atty., AND J. A. POWERS,
"Attorneys for Defendant."

It was also stipulated and agreed between the parties in open court that Greer county in the state of Texas was organized under the authority of said state on or about the tenth day of July, 1886, while the state of Texas was exercising sovereignty over that territory known as Greer county, and continued an organized county under the sovereignty of the state of Texas until the passage of the act of Congress, approved May 4, 1896, entitled, "An act to establish and provide for the government of Greer county, Oklahoma, and for other purposes." Since which time the territory embraced in said Greer county in the state of Texas has been embraced within Greer county, in the Territory of Oklahoma, which is and has been an organized county government under the authority of the laws of said territory since the said date. And the said cause was heard and determined upon the said agreement. The plaintiff thereupon introduced the warrants sued upon in this action. And the following are copies of two of said warrants which show the form of the warrant in each case.

"Clerk's Office, Greer County, Texas.

"No. 170.

"To Treasurer of Greer County:

"Pay to Clarke and Courts, or Bearer, the sum of One Hundred One & .35 Dollars, with 8 per cent interest from date, out of the Third class fund for stationery as allowed by the County Commissioners at the March 11, Term, 1889. "Min. Book 1. Page 150.
"$101.35.

"HENRY WATKINS,
"County Clerk, Greer County, Texas.
"By J. W. LOGAN, Deputy.

"Indorsed:—Clarke and Courts, per R. W. Shaw,

Sec'y. No. 322; Third class. Registered this 20 day of Mar. 1889. M. L. Vanleer, county treasurer.

["SEAL."]   Commissioners court, Greer county, Texas.

\* \* \* \* \* \* \* \* \* \* \*

. "No. 464.

"The Treasurer of Greer County will pay to Clarke and Courts, or bearer, the sum of one hundred and thirty-nine dollars out of the 3rd class fund, being the amount allowed by the county commissioners court of said county, at their April term, 1891, for stationery.

"Witness my hand and seal of said court at office this 30 day of April, 1891.

"$139.00                           J. W. LOGAN Clerk.

"This warrant bears 10 per cent interest from date.

"Indorsed:—Clarke & Courts, per R. W. Shaw, Sec'y. No. 789. 3rd class. Registered the 20 day of April, 1891. S. C. Vanleer, county treasurer.

["SEAL."]   Commissioners court, Greer county, Texas."

\* \* \* \* \* \* \* \* \* \* \*

The court found the issues in favor of the plaintiff and against the defendant, Greer county, Oklahoma, and rendered judgment in the sum of $2357.20, together with interest from the date of the rendition of the judgment until paid, and costs of the action. The defendant thereupon filed a motion for a new trial, alleging the following grounds: First—That the judgment is unwarranted, and is not sustained by the agreed statement of facts as filed in this case; And, second—That the judgment is contrary to law. Upon consideration by the court the motion for a new trial was overruled, to which ruling an exception was reserved by the defendant. From the refusal to grant a new trial, and the judgment of the court, the defendant

in the court below, plaintiff in error, brings the cause here for review.

Opinion of the court by

HAINER, J.: Two questions are involved in the determination of this case, namely: (1) Is Greer county, Oklahoma, liable for the valid obligations of Greer county, Texas? And, (2) Are the warrants sued upon in this action barred by the statute of limitations? We are of the opinion that the first question must be answered in the affirmative and the second in the negative.

In *Cullins v. Overton,* 7 Okla. 470 this court held that Greer county, Texas, was a *de facto* municipal government. Mr. Chief Justice Burford, speaking for the court in this case discussing the history of the organization of Greer county, Texas, and reviewing the authorities as to its legal status, said:

"Upon the principles enunciated in the foregoing authorities, we have no hesitancy in holding that from the time Greer county was organized as a county by the state of Texas up to the 16th day of March, 1896, there was a *de facto* government in Greer county, and that the county court of Greer county was a *de facto* court, and that all its judgments and proceedings which were had and done according to the laws of the state of Texas, are valid and binding, and should be recognized, and given full faith and credit. During that period the state of Texas, a *de jure* government, exercised undisturbed sovereignty and jurisdiction over said territory, and it is not shown or claimed that the inhabitants made any objection thereto. And while this power was exercised without right it constituted a *de facto* government, executive, legislative and judicial, and all the acts of its officers and courts, not in contravention of any rights under the

laws and constitution of the United States, are valid and. binding."

In *Cameron's Executors v. State*, 67 S. W. 348, the Texas court of civil appeals held that the act creating Greer county, Texas, was unconstitutional and void; and further held that it was not a *de facto* or *de jure* government and that its officers who presumed to act for said county were not *de facto* officers. From this decision an appeal was taken to the supreme court of Texas, and since the filing of briefs by counsel for plaintiff in error the supreme court of Texas reversed the decision of the court of appeals, and held that Greer county, Texas, was a *de facto* municipal corporation and its officers were *de facto* officers. (*Cameron's Executors v. State*, 68 S. W. 580.)

Congress by the act of May 4, 1896, recognized Greer county, Texas, as a *de facto* government; and that its officers were *de facto* officers. And it expressly provided in said act that all public buildings and property of every description heretofore belonging to Greer county, Texas, or used in the administration of public business were declared to be the property of Greer county, Oklahoma, and that all county officers shall be continued in office until the first Tuesday in November, 1896, or until their successors are elected and qualified at an election to be held on the first Tuesday in November, 1896, as provided by the laws of the Territory of Oklahoma; and that all provisions of law applicable to the organization and government of counties in Oklahoma shall forthwith be applied by the proper officers thereof to said Greer county, the intention being to provide without delay, the same organized government for said Greer county as for other coun-

ties of Oklahoma. Said act further provided that all written contracts, conveyances, mortgages, liens, or other instruments which have been heretofore filed or recorded in said Greer county in conformity with the laws of the state of Texas, shall be held and considered to have been legally filed or recorded, and it shall not be necessary again to file or record them. And said act further provided that all interest, rights, titles, and estates, conveyed, limited, encumbered, or in any wise affected by any contract, lien, conveyance, mortgage, or other instrument, or by any judgment or decree of any court of Texas of competent jurisdiction, and all judgments of said courts, civil and criminal, prior in date to March 16, 1896, shall have the same force and effect, in all respects, as if said Greer county had legally formed a part of the territory of the state of Texas up to March 16, 1896, and had upon that date been lawfully ceded by Texas to the United States with a reservation and ratification of all existing rights and liabilities according to the laws of Texas.

It will be thus seen that said act transfers the entire government of Greer county, Texas, executive, legislative and judicial, from the state of Texas to Greer county, Oklahoma; and it expressly provides that all existing rights and liabilities shall be transmitted to Greer county, Oklahoma, and remain in full force and effect.

In *Comanche County v. Lewis,* 133 U. S. 198 the supreme court of the United States has held that when a legislature has full power to create corporations, its act, recognizing as valid a *de facto* corporation, whether private or municipal, operates to cure all defects in steps leading up to

the organization, and making a *de jure* out of what was before only a *de facto* corporation.

It follows, therefore, that Greer county, Texas, at the time the obligations sued on in this action were issued, was a *de facto* municipal corporation, and that its officers were *de facto* officers invested with full power and authority to create said indebtedness. Being a *de facto* municipal corporation, its officers had the power to create indebtedness for lawful corporate purposes; and it had the power and authority to levy and collect taxes to pay such indebtedness. The power to levy and collect taxes and pay such indebtedness is not a grant of power to the municipitality as a corporate body, but it is a necessary and indispensible power that is vested in the inhabitants of the incorporated territory. Hence the valid obligations created by the municipality must survive the dissolution of the corporation, and must pass with whatever public property it may possess to the inhabitants who continue to reside under the new corporation within the boundaries of the municipal area, and in behalf of the inhabitants of which the debt was originally created.

The decisions of the supreme court of the United States sustain this general doctrine.

In *Broughton v. Pensacola,* 93 U. S. 266, it was held that a change in the charter of a municipal corporation, in whole or part, by an amendment of its provisions, or the substitution of a new charter in place of the old one, embracing substantially the same corporators and the same territory, will not be deemed, in the absence of express legislative declaration otherwise, to affect the identity of the corporation, or to relieve it from its previous liabili-

ties, although different powers are possessed under the amended or new charter, and different officers administer its affairs.   The opinion of the supreme court of the United States in this case was delivered by Mr. Justice Field, who, in the course of the opinion, said:

"The ancient doctrine that, upon the repeal of a private corporation, its debts were extinguished, and its real property reverted to its grantors and its personal property vested in the state, has been so far modified by modern adjudications, that a court of equity will now lay hold of the property of a dissolved corporation, and administer it for the benefit of its creditors and stockholders.   The obligation of contracts, made whilst the corporation was in existence, survives its dissolution; and the contracts may be enforced by a court of equity, so far as to subject, for their satisfaction, any property possessed by the corporation at the time.   In the view of equity, its property constitutes a trust fund, pledged to the payment of debts of creditors and stockholders; and, if a municipal corporation, upon the surrender, or extinction in other ways, of its charter, is possessed of any property, a court of equity will equally take possession of it for the benefit of the creditors of the corporation."

And in conclusion the learned justice said:

"When, therefore, a new form is given to an old municipal corporation, or such a corporation is recognized under a new charter, taking in its new organization the place of the old one, embracing substantially the same corporators and the same territory, it will be presumed that the legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter, and different officers administer its affairs; and, in the absence of express provision for their payment otherwise, it will also be presumed, in such case,

that the legislature intended that the liabilities as well as the rights of property of the corporation in its old form should accompany the corporation in its reorganization. That such was the intention of the state of Florida in the present case, we have no doubt; to suppose otherwise would be to impute to her an insensibility to the claims of morality and justice, which nothing in her history warrants.

"The principle which applies to the state would seem to be applicable to cases of this kind. Obligations contracted by its agents continue against the state, whatever changes may take place in its constitution or government. 'The new government,' says Wheaton, 'succeeds to the fiscal rights, and is bound to fulfill the fiscal obligations, of the former government. It has become entitled to the public domain and other property of the state, and is bound to pay its debts previously contracted.' (Inter. L. 30.) So a change in the charter of a municipal corporation, in whole or in part, by amendment of its provisions, or the substitution of a new charter in place of the old one, should not be deemed, in the absence of express legislative declaration otherwise, to affect the identity of the corporation or to relieve it from its previous liabilities."

In *Mt. Pleasant v. Beckwith,* 100 U. S. 514, a municipal corporation had been dissolved, and its territory divided and annexed to three adjacent corporations. Upon this state of facts the court held that unless the legislature otherwise provided, the corporations to which the territory and inhabitants of the divided corporation had been transferred, were severally liable for a proportionate share of its debts, and were vested with its power to raise revenue wherewith to pay them, by levying taxes upon the property transferred to the persons residing therein. Mr. Justice Clifford, in discussing this subject said:

"Municipal debts cannot be paid by an act of the legisla-

ture annulling the charter of the municipality, and, if not, then the creditors of each political division must have some remedy after the annulment takes place. Without officers, or the power of electing such agents, a municipal corporation, if it can be so called, would be an entity very difficult to be subjected to legal process of to legal responsibility; but when the entity itself is extinguished, and the inhabitants within its territory and other property are transferred to other municipalities, the suggestion that creditors may pursue their remedy against the original contracting party is little less than mockery. Public property, with the inhabitants and their estates, and the power of taxation having been transferred by the authority of the legislature to the appellants, the principles of equity and good conscience require that, inasmuch as they are and have been for nearly twenty years in the enjoyment of the benefits resulting from the annexation, they shall in due proportions also bear the burdens. (*New Orleans v. Clark,* 95 U. S. 644.")

And in concluding the opinion he declared that:

"Pecuniary burdens may be increased or diminished by the change; but, in the absence of express provisions regulating the subject, it will be presumed in every case that where both municipalities are continued, that the outstanding liabilities of the same remain unaffected by such legislation. Unlike that in this case, the charter of the old town was vacated and annulled; from which it follows that the same principles of justice require that the appellant towns; to which the territory, property and inhabitants of the annulled municipality were annexed, should become liable for its outstanding indebtedness."

In *Port of Mobile v. Watson,* 116 U. S. 289, the supreme court of the United States held that where a municipal corporation is dissolved and a new corporation is created composed of substantially the same community, including sub-

stantially the same taxable property, within reduced territorial limits organized for the same general purposes, and holding by transfer without consideration, the public property of the former, it is the successor of the old corporation, and is liable for its debts.

In *Comanche County v. Lewis* it was held that the debts of a county, contracted during a valid organization remain the obligations of the county, although for a time the organization be abandoned, and there be no officers to be reached by the process of the courts. The opinion of the court was delivered by Mr. Justice Brewer, and in the course of the opinion he uses the following clear and forcible language:

"No one would for a moment suppose that when the county has contracted a valid obligation, the fact, if it could be made to appear, that all its inhabitants had been removed and their places supplied by others, would affect that obligation. There has been no subdivision of the original territory; no addition to or subtraction from it. The only change has been in the continuity of political organization, and that, neither by municipal law nor the law of nations, destroys the territorial responsibility for legal obligations. Even a change in form does not destroy responsibility. The republic of France recognizes as valid the debts of the empire."

Applying the principles announced in these well considered cases by the supreme court of the United States, which this court must regard as final and authoritative, to the case under consideration, it follows that Greer county, Oklahoma, is liable for the valid obligations of Greer county, Texas.

This brings us to the second proposition, and that is,

were the warrants, which are the subject of controversy, valid obligations of Greer county, Texas, at the date of the approval of the act of congress of May 4, 1896, when the property was transferred from the *de facto* government of Greer county, Texas, to the *de jure* corporation of Greer county, Oklahoma? And were the warrants at that time barred by the statute of limitations under the laws of Texas? The warrants having been issued during the years 1889 to 1892 inclusive, more than five years elapsed from the date of their issuance until they became subject to the laws of Oklahoma.

These warrants were issued on a particular fund. They were drawn on what was known as the "third class fund," under the laws of the state of Texas; and immediately after their issuance they were registered. It appears that under the laws of the state of Texas when a warrant is issued and there are no funds in the treasury to pay it, it is then registered, and after such warrant is registered it must be paid in the order of registration. No provision was ever made by Greer county, Texas, by the exercise of its taxing powers or otherwise, to pay the warrants which are the subject of this controversy. In our opinion where a warrant is issued by the officers of a municipal or quasi municipal corporation, and the creditor accepts the same relying on the ordinary modes of taxation to pay said obligation, the corporation cannot be heard to say, upon an action to enforce the payment thereof, that it is barred by the statute of limitations without first pleading and proving that it has provided a fund for the payment of such indebtedness. And while the authorities are not entirely harmonious upon this question, we think that the trend of modern decisions sustains this doctrine.

In *Lincoln County v. Luning* 133 U. S. 529, Mr. Justice Brewer, in discussing this question said:

"By the general limitations law of the state some of the coupons were barred; but there has been this special legislation in reference to these coupons. The bonds were issued under the funding act of 1873. In 1877 the county was delinquent in its interest, and the legislature passed an act amendatory to the act of 1873. This amendatory act provided for the registering of overdue coupons, and imposed upon the treasurer the duty of thereafter paying the coupons as money came into his possession applicable thereto, in the order of their registration. (Statutes of Nevada, 1877, 46.)

"The coupons which by the general limitation law would have been barred were presented, as they fell due, to the treasurer for payment, and payment demanded and refused, because the interest fund was exhausted. Thereupon the treasurer registered them as presented, in accordance with the act of 1877, and from the time of their registration to the commencement of this suit there was no money in the treasury applicable to their payment. This act, providing for registration and for payment in a particular order, was a new provision for the payment of these bonds, which was accepted by the creditors, and created a new right upon which he might rely. It provided, as it were, a special trust fund, to which the coupon holder might, in the order of registration, look for payment, and for payment through which he might safely wait. It amounted to a promise on the part of the county to pay such coupons as were registered, in the order of their registration, as fast as money came into the interest fund; and such promise was by the creditor accepted; and when payment is provided for out of a particular fund to be created by the act of the debtor, he cannot plead the statute of limitations until he shows that that fund had been provided."

We think this is a clear and forcible statement of the law.

In *King Iron Bridge and Manufacturing Co. v. Otoe County,* 124 U. S. 459, a case arose in the supreme court of the United States from the state of Nebraska, in which this subject was under consideration by the court. It appeared that suit was brought to recover the amount due upon certain warrants of a county. The petition alleged, among other things, that the warrants had been presented to the county treasurer, and payment thereon demanded. The county treasurer endorsed upon the warrant "not paid for want of funds." Afterwards the warrants were duly registered for payment. The answer set up as a defense that the cause of action did not accrue within five years next before the commencement of the suit. To this a demurrer was filed upon the ground that the answer did not state facts sufficient to constitute a defense, and "that by the statutes of Nebraska and the construction given thereunder by the court of Nebraska, the statute does not run against a county warrant." This demurrer was overruled, and judgment rendered in favor of the county. The case was appealed to the supreme court of the United States, and the judgment of the lower court was reversed on the ground that in Nebraska the statute for five years does not run against a county warrant. And that the cause of action upon such warrant did not accrue when the payment was refused. The court further held that in an action to recover the amount due upon warrants an answer that the cause of action did not accrue within five years next before the commencement of the suit, did not state facts sufficient to constitute a defense.

Chief Justice Waite said:

"According to the rule established in *Brewer v. Otoe*

*County,* the cause of action did not accrue when the payment was refused, 'but only when the money for its payment is collected, or time sufficient for the collection of the money has elapsed.' We cannot say, as a matter of law, that this was more than five years before the commencement of the action."

In *Robertson v. Blaine County,* 90 Fed. 63, it was held that a county cannot plead limitation to an action against it to enforce an obligation payable from a particular fund, without first showing that it has provided such fund. In this case the rule announced by Mr. Justice Brewer in *Lincoln County v. Luning* was approved and followed.

The same rule has been adopted by the supreme court of Kansas in *Hubbell et al v. City of South Hutchinson,* 68 Pac. 52, where it was held that the statute of limitations will not start to run in favor of a city on its outstanding warrants until it has money in its treasury to satisfy such obligations. In the course of the opinion the court said:

"This action was based upon certain written obligations, and, in the absence of the intervening circumstances would become barred within five years from the date of their issuance. It is the settled law of this state, however, that the statute of limitations does not run in favor of a municipal or quasi municipal corporation upon its outstanding obligations until the corporation has provided a fund with which payment thereof may be made."

We concur in the views announced in these decisions. It follows, therefore, that the warrants sued upon in this action were not barred by the statute of limitations under the laws of the state of Texas, and that they were valid and subsisting obligations at the time Greer county, Texas, was transferred to Greer county, Oklahoma.

This brings us to the last proposition, and that is: Is the action barred by the statute of limitations under the laws of Oklahoma? It is strenuously contended by learned counsel for plaintiff in error that if the obligations of Greer county, Texas, are valid and binding upon Greer county, Oklahoma, that such liability would not arise unless the law implies a contract that the new corporation shall pay the debts of the old, or unless such obligation was imposed by the statute. In other words, that the obligation imposed arises either by clear implication of law or is imposed by legislative enactment. And in support of this contention by counsel for plaintiff in error, the case of *Robertson v. Blaine County,* 90 Fed. 63, is relied upon. Upon examination it would seem that the reasons announced by the learned judge in this case sustains the contention of plaintiff in error. We have carefully examined this decision and concur in the conclusions and judgment of the court but not with the reasons therein stated. In that case the legislature of Idaho abolished Alturus and Logan counties and created from the same territory Blaine county; and provided that all valid and legal indebtedness of Alturus and Logan counties shall be assumed and paid by the county of Blaine, and that all rights of action now existing in favor of or against said Alturus and Logan counties may be maintained in favor of, or against, Blaine county. Blaine county was sued upon bonds issued by Alturus county. The court held that no action could be maintained against Blaine county upon the bonds issued by Alturus county, except by virtue of the statute creating the new county, and, therefore, that the liability was one created by the statute within the meaning of the statute of limitations. This, in our opinion, is not a correct statement of the law and is in direct conflict with the

decisions of the supreme court of the United States. Manifestly the act creating Blaine county out of the same territory which formerly composed Alturus and Logan counties did. not create a new obligation, but only recognized the validity of the indebtedness of the old corporations, and expressly provided that Blaine county shall assume and pay said indebtedness. It simply placed the new corporation in the shoes of the old. Blaine county took the place of Alturus and Logan counties. It received all the property and all the benefits resulting therefrom, and, was, therefore, legally and morally bound to. assume and pay all of its just and valid obligations. The new corporation of Blaine county was included within. the same territory, inhabited by the same people, and possessed all the property of the old corporation, and the only difference between the old corporations and the new is that the boundaries of the two old corporations were included in. the new, and the names of the old counties changed to Blaine. Certainly the change in the name of a payor cannot change or affect the liability of a corporation, any more than the change of the name of an individual by legislative enactment could affect his valid obligations.

The supreme court of the United States had this same question under consideration in *Shapleigh v. San Angelo,* 167 U. S. 647, and it was there declared that:

"When we hold that the new corporation, under the facts disclosed by this record is subject to the obligations of the preceding. corporation, we mean subject to them as existing legal obligations, in manner and form as they would have been enforceable had there been no change of organization."

Applying this rule to the case at bar, it follows that Greer county, Oklahoma, is liable for the valid obligations of Greer county, Texas, in manner and form as they would have been enforceable had there been no change of organization. The fact that a corporation is dissolved or becomes defunct, and a new corporation is created composed of exactly the same territory and the same people, and the same taxable property, and organized for the same general purposes, and holds by transfer, without consideration, the public property of the former, it is to all intents and purposes the legal successor of the old corporation and is liable for its just debts and obligations. This court will presume that when congress established Greer county, Oklahoma, and transferred to it all the public property of Greer county, Texas, without any consideration whatever, and provided for the ratification of all existing rights and liabilities, that it intended that the liabilities as well as the rights of property of Greer county, Texas, which thereby ceased to exist, shall accompany the territory and property into the new jurisdiction which was thereby created; and we have no doubt that such was the manifest intention of congress. Certainly congress did not intend that Greer county, Oklahoma, should receive all the benefits that accrued to it from the transfer of the property from Greer county, Texas, and not bear the burdens that were incident to such transfer.

It follows that this action was rightfully brought upon the warrants in manner and form as issued by Greer county, Texas, and that they were not barred either by the statute of limitations of the state of Texas, or of Oklahoma.

The judgment of the district court of Oklahoma county, Oklahoma, was right, and it is therefore affirmed.

Burwell, J., who presided in the court below, not sitting; Beauchamp, J., absent; all the other Justices concurring.