G. SAM ROGERS, APPELLEE, V. CITY OF OMAHA, APPELLANT.

FILED JUNE 26, 1908.   No. 15,244.

1. **Cities: WARRANTS: VALIDITY.** "A warrant issued by a city in consideration of a demand which is a valid obligation payable out of its general funds is not invalidated by a recital, not contemplated by the statute, that it shall be payable out of a special fund which the city is not authorized to create, or out of a special fund which the city may lawfully create, but the failure to create which is due solely to the fault or negligence of the city." *Abrahams v. City of Omaha,* 80 Neb. 271.

2. **Limitation of Actions: CITY WARRANTS.** The statute of limitations does not commence to run against warrants issued by a municipal corporation, payable out of a special fund to be created, until such fund has in fact been created, and there is sufficient money in the fund with which to pay the warrants.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*H. E. Burnam, I. J. Dunn* and *John A. Rine,* for appellant.

*W. A. Saunders, contra.*

FAWCETT, C.

Plaintiff sued in the district court for Douglas county to recover a balance alleged to be due for the construction of artificial stone sidewalks in the city of Omaha, such balance being represented by what is termed "special fund warrants" issued by the city to the contractors who laid the walks. The walks were laid under three semi-annual contracts, covering the periods of time from January 1 to June 1, 1893, from June 1, 1893, to January 1, 1894, and from June 1 to January 1, 1895, and one annual contract running from December 31, 1896, to December 31, 1897. Plaintiff had judgment in the court below, and from that judgment this appeal is prosecuted. The only assignments of error here, sufficiently definite to entitle them to

consideration, are: (3) The findings and judgment of the court are not supported by sufficient evidence. (5) That plaintiff's action was barred by the statute of limitations. We will consider these assignments in the order named.

1. There are practically no disputed facts in the record. At the times specified in the contracts above referred to, defendant entered into contracts with the several contractors named in said contracts for the construction of permanent sidewalks. The contracts are all four identical in their terms. It is provided in each of the contracts as follows: "All materials furnished, or work performed, under this contract, is to be to the satisfaction of the board of public works and city engineer, and, when completed, the sidewalk shall be measured and estimated by the city engineer, and reported for approval of the board of public works, the mayor and city council. Upon approval of such estimates by the mayor and city council, the said party of the first part (the city) will issue to the said party of the second part (the contractor) its warrants upon the city treasurer, drawn against the special fund to be created by assessments upon the lots and real estate adjacent to and abutting upon the portion of the street along which sidewalks may, under the provisions hereof, be constructed, which warrants the said party of the second part agrees to receive in full satisfaction and payment for all work done and all material furnished by him under this contract." The work was faithfully performed in each instance by the contractor, and, when completed, was duly measured and estimated and reported to and confirmed by the mayor and city council, and the warrants in controversy were issued to the contractors in accordance with the terms of the contracts. All of the warrants in controversy subsequently passed by due assignment to the plaintiff in this action. For the purpose of creating a fund to pay these warrants, the mayor and council passed certain ordinances levying special assessments against the abutting property owners. A considerable number of the abutting property owners

recognized the validity of such special assessments and, from time to time, paid to the treasurer the amounts of their special assessments, all of which were applied, as fast as received, to the payment of the warrants which were prior in date of registry to the warrants in suit here. The validity of the special assessments was not questioned until December 28, 1903, April 21, 1904, and July 27, 1904, when, as appears from the stipulation of the parties, the special taxes provided for by said special assessments were, by the district court for Douglas county, canceled; the ground of such cancelation, as appears from the pleadings, being that the mayor and city council had not complied with the law in making such assessments. On March 16, 1905, the defendant having taken no steps to make a relevy for the purpose of paying the warrants in controversy, this action was brought.

It appears, therefore, from the uncontradicted evidence, that the defendant, by its mayor and council, entered into contracts for the laying of the sidewalks referred to; that plaintiff's assignors duly performed their part of the contracts; that the work when finished was approved by the engineer, confirmed by the city council, and the amount due the contractors ascertained and set forth in the warrants now before us; that the warrants have never been paid; that the defendant has never taken any proper and legal steps to create a fund out of which the warrants could be paid. It is clear, therefore, that, if defendant, through its mayor and council, had authority to make the contracts referred to, defendant's contention that the judgment is not sustained by the evidence must fail. The provisions of chapter 12a, Comp. St. 1895, so far as they relate to the matters in controversy, are identical with the provisions of the statute during each of the years in controversy. Section 6 of that chapter provides: "Each city governed by the provisions of this act shall be a body corporate and politic, and shall have powers: Fourth. To make all contracts and do all other acts in relation to the property and concerns of the city, necessary to the exer-

cise of its corporate or administrative powers. Fifth. To exercise such other and further powers as may be conferred by law. The powers hereby granted shall be exercised by the mayor and council of such city as hereinafter set forth, except when otherwise specially provided." Section 69 reads: "The mayor and council shall have power to open, extend, widen, narrow, grade, curb, and gutter, park, beautify, or otherwise improve and keep in good repair, or cause the same to be done in any manner they may deem proper, any street, avenue, or alley within the limits of the city, and may grade partially or to the established grade, or park or otherwise improve any width or part of any such street, avenue or alley, and may also construct and repair, or cause and compel the construction and repair of sidewalks in such city, of such material and in such manner as they may deem proper and necessary." These provisions give the mayor and city council full and absolute authority to do any of the things above stated. If the city desires to reimburse itself for any portion of the moneys expended for any of the above purposes then the section provides: "And to defray the cost and expense of improvements or any of them, the mayor and council of such city shall have power and authority to levy and collect special taxes and assessments upon the lots and pieces of ground adjacent to or abutting upon the street, avenue, alley, or sidewalk thus in whole or in part opened, widened, curbed, and guttered, graded, parked, extended, constructed, or otherwise improved or repaired, or which may be especially benefited by any of said improvements." In considering a similar statute in *Rogers v. City of Omaha*, 76 Neb. 187, we held that all of the limitations in this section of the statute, outside of the portion above quoted, are to be regarded as safeguards to property owners from special burdens, rather than as an attempted limitation of the general powers of the mayor and council over the streets and alleys of the city. We think the construction then placed upon this statute was correct, and therefore adhere to it. We also held in that case that,

"where a municipal corporation receives and retains substantial benefits under a contract which it was authorized to make, but which was void because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received."

It is insisted by defendant that, the warrants in question having been issued against a fund which never was in fact created, the warrants themselves were void and of no force or effect whatever. This contention has already been decided adversely to defendant in *Abrahams v. City of Omaha,* 80 Neb. 271, where we held: "A warrant issued by a city in consideration of a demand which is a valid obligation payable out of its general funds is not invalidated by a recital, not contemplated by the statute, that it shall be payable out of a special fund which the city is not authorized to create, or out of a special fund which the city may lawfully create, but the failure to create which is due solely to the fault or negligence of the city. A warrant issued by the proper authorities of a city in consideration of a valid indebtedness against it is a written acknowledgment of such indebtedness and promise to pay it."

That the defendant, through its mayor and council, had full power and authority to enter into the contracts for the sidewalks cannot be seriously questioned, but the defendant contends that, inasmuch as the contract itself provides that the work done by the contractor shall be paid for in warrants drawn against a special fund to be created by an assessment upon the lots, and that the contractor agreed to receive such warrants in full satisfaction and payment for all work done and all material furnished by him under his contract, and no fund ever having been created, the city is relieved from all liability. This will not do. The law is well settled that, when a municipal corporation enters into a contract of this character, it thereby agrees to create the special fund, by valid assessments, and that, failing so to do, it is liable generally. It will not do to say that a city may contract for the ex-

penditure of large sums of money and material and a large amount of labor in constructing valuable improvements for the city, and agree to pay for such improvements out of a fund to be created by a special assessment, and then escape all liability by never creating the fund, or, if it attempts to create such a fund, by proceeding so irregularly that the assessments when levied cannot be enforced.  No such dishonesty would be tolerated in an individual, and we see no reason why it should be in the case of a municipal corporation.  As said by the supreme court of California, in *Pimental v. City of San Francisco,* 21 Cal. 351, 361: "The city is not exempted from the common obligation to do justice, which binds individuals. Such obligation rests upon all persons, whether natural or artificial.  If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation.  If she obtain other property, which does not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor, from the like obligation. *Argenti v. San Francisco,* 16 Cal. 255, 282. The legal liability springs from the moral duty to make restitution.  And we do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated.  The law countenances no such wretched ethics; its command always is to do justice."

In *Pine Tree Lumber Co. v. City of Fargo,* 12 N. Dak. 360, 373, it is said: "The city, as we have seen, is provided with the means of fully protecting itself against expense in the making of special improvements.  Any payments made upon its contracts for paving should be paid for out of the funds realized from the special assessments; and, if the city exercise the powers given it, the general taxpayer cannot be burdened at all with the cost of the improvement.  If, however, the city council fails to take advantage of the means provided to realize upon special assessments the cost of the improvement, as between the

city it represents and the contractor, the consequences of the neglect should fall upon the city."

In *Moore v. Mayor*, 73 N. Y. 238, the court say: "While courts have been vigilant in their scrutiny of corporate action, and have zealously striven to keep corporations and their agents within the limits of granted powers; they have not favored defenses to honest demands, based upon mere irregularities and informalities."

In *Second Congregational Church Society v. City of Omaha*, 35 Neb. 103, we said: "To us it appears unjust, inequitable, and contrary to every principal of right to permit the city, after it has damaged property by changing the grade of the street upon which it abuts, to urge defects in its proceedings to defeat an appeal taken by the landowner to recover a fair compensation for the damages sustained. To do so would be to allow the city to take advantage of its own wrong after it had accomplished that which it undertook to do—the change of the street grade. Such a rule courts should not sanction."

In *Rogers v. City of Omaha*, 76 Neb. 187, we said: "The defense of payment by the delivery of the void warrants is not strongly urged in this court, nor would it profit much to urge it here. Had valid warrants been delivered against a fund created, a different proposition would be presented."

In *Commercial Nat. Bank. v. City of Portland*, 33 Pac. (Or.) 532, it is held: "A stipulation in a contract by a city for a public improvement, that the contractor shall look for payment to a particular fund to be raised by assessment, does not relieve the city from liability for negligently delaying to raise such fund." In the opinion, 24 Or. 188, the court say: "The stipulation provides that the contractor shall look for payment to the special fund, and that 'he will not compel the city, by legal process or otherwise, to pay for the improvement out of any other fund,' and the defendant contends, if any force or effect is to be given to such stipulation, that it is liable to pay the warrants in question only when such special fund is raised

and collected, and consequently that the defendant is not liable generally in an action for damages upon them. This view would relieve the city of any liability to pay such warrants until such special fund is raised and collected by assessments, although its failure to realize such fund may be due to its own neglect or unreasonable delay. Under its charter the city is invested with the power to order local improvements, and afforded the means to raise the necessary funds to pay for them by assessments upon the property benefited thereby.  *  *  *  There is no pretense but that the obligation resting upon the contractor to perform the work and furnish the materials required has been satisfactorily performed, and the improvement accepted. Having performed his obligation, the duty rested upon the city to discharge its obligation."

In *Iowa Pipe & Tile Co. v. Callanan,* 101 N. W. (Ia.) 141, it is held: "The ordinance under which work was done on a street improvement provided that the cost might be taxed against private property abutting on the street, and for collecting assessments and issuing certificates in payment thereof; and the contract provided that the assessment certificates should be received by the contractor in full payment for the work. Held, That the city was liable to the contractor for the amount of a certificate where the assessment against the property in question was entirely invalid." In the opinion, 125 Ia. 358, the court say: "While we do not understand from the appellee's argument that it seriously denies the liability of the city in case the assessment is held invalid, there is a suggestion therein that the stipulation that the assessment certificates shall be received in full payment for all work done without recourse on the city relieves the city from all liability on account of its invalid assessment. This position is not tenable, however. The ordinance under which the work was done provided that the cost thereof might be taxed against the private property abutting on the street, and for making and collecting assessments, and for issuing certificates in payment therefor. The · contract provided  .

that the cost was to be assessed and paid as provided in the ordinance, but it was not contemplated by either party thereto that the city would make an assessment against abutting property which could not be enforced, and we think it must be held that the latter clause of the contract means nothing more than the acceptance of certificates which are legal, and representing an assessment valid and enforceable." In speaking on this subject, the supreme court of Iowa on another occasion, in *Ft. Dodge Electric L. & P. Co. v. City of Ft. Dodge,* 115 Ia. 568, in the fourth paragraph of the syllabus, say: "Where a municipal paving contract stipulated that the contractor should receive the special assessment certificates in full payment, but such assessment was illegally and without authority levied on the property of a street railway not liable therefor, the city was liable to the contractor for the amount of the void certificates, since, had the entire amount been assessed against abutting property, it would have been valid, and it therefore lay within the power of the city to fulfil its agreement by making a valid assessment."

In *City of Chicago v. People,* 56 Ill. 327, the court say: "An individual entered into a contract with the city of Chicago to execute certain public improvements in the way of curbing, filling and macadamizing a street, the city agreeing to pay for the same when the work was completed and accepted, and when the special assessment, levied or to be levied for the same, should be collected. A part of the assessment could not be collected, for the reason that the city had, by contract with the owner of the property upon which it was levied, expressly exempted it from such assessments, and the assessment was, therefore, to that extent void. Held, The condition of the contract to pay when the assessment should be collected being impossible and void, the promise, to that extent, was single and absolute, and the contractor having no notice of such void assessment at the time he assented to such condition would have his remedy against the city to recover what he would have been entitled to had the entire assessment

been valid. * * * Section 17 of chapter 6 of the charter provides that 'any persons taking any contracts with the city, and who agree to be paid from special assessments, shall have no claim or lien upon the city in any event, except from the collections of the special assessments made for the work contracted for.' But this does not preclude the courts from determining the legal effect of a contract to be that, where the city has no such assessments as it purports to have, the party is to be deemed as not so agreeing."

In *Morgan v. City of Dubuque,* 28 Ia. 575, it is said: "Where the plaintiff built a sidewalk for the defendant— a municipal corporation—for which he was to receive pay when the city collected the costs thereof by assessments made upon the adjacent lot owners, it was held that the city was bound to collect the assessments, or to make an effort so to do, within a reasonable time after the performance of the work, and that its failure so to do rendered it liable to pay the stipulated price of the work. The burden of proof in such case is upon the city to show diligence in endeavoring to collect."

In *Hitchcock v. Galveston,* 96 U. S. 341, it is said: "It matters not that the promise was to pay in a manner not authorized by law. If payments cannot be made in bonds because their issue is *ultra vires,* it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law."

Defendant's contention that it is not liable generally upon the warrants in controversy because the agreement was to pay out of a special fund when collected from the abutting property owners, and that fund was not collected because it never was validly created, or, in other words, because the defendant never had such a fund, would bring the defendant within another familiar rule, viz.: "If a person promise to pay a sum of money when he shall collect his demands of another, then, if it appear that he had no demands, or if he have, and fail to use due diligence to collect them, in either case the promise may be enforced

as absolute." *City of Chicago v. People, supra.* In the light of the above authorities, as applied to the undisputed evidence in the record before us, the contention of defendant that the judgment of the court below is not sustained by sufficient evidence must fail.

Defendant insists that plaintiff ought not to recover because of his failure to proceed by mandamus to compel the defendant to make a new and valid levy. In other words, that the defendant may refuse to perform a plain duty, and then, when called into court to answer for its neglect, say it cannot be held liable because the plaintiff did not take the initiative, and by legal proceedings compel it to perform the duty which not only the law but its contract with the party imposed upon it.

In *Denny v. City of Spokane,* 79 Fed. 719, the court quotes with approval from *McEwan v. City of Spokane,* 16 Wash. 212, 47 Pac. 433, as follows: "Under the special contract in this case and under the law it was not the duty of the contractors to look after the assessment; that was a duty which not only the law imposed upon the city, but which the special conditions of its contract imposed upon it, and, if the city was mistaken in regard to its construction of the law, the city must be responsible for such mistake, and not the contractors, who were not authorized to construe or enforce the law."

In *Commercial Nat. Bank v. City of Portland,* 24 Or. 188, the court say: "When the city orders a local improvement, the duty devolves upon it to put the necessary machinery in motion to raise the funds to pay for it by assessments upon the property affected."

In *Ft. Dodge Electric L. & P. Co. v. City of Ft. Dodge,* 115 Ia. 568, the court say: "This is not a case where the city undertook to do something which it could not do, and which the party contracting with it was bound, as matter of law, to know it could not do. Here the city could have done what it agreed to do (that is, have made a valid assessment on abutting property for the entire cost of the improvement not directly assumed by the city), and it

failed to do so. The party contracting with the city had no control over the method of determining the part of the cost which should be assessed to each property owner, nor over the method of issuing certificates. If, by the wrongful action of the city, he is unable to realize on any of the certificates issued to him, by reason of the wrongful action of the city council in carrying out the contract between him and the city, then we think he has a right to recover from the city. It has been frequently decided that where a city issues obligations payable out of a special fund, which it has authority to raise, but fails to take the steps necessary to bring such fund into existence, the holder of the obligations may recover against the city. In *Reilly v. City of Albany*, 112 N. Y. 30, the following language is used which seems pertinent in the case we have before us: 'When the contractor had performed his work according to his contract, he had no duty remaining to discharge, and then he had a right to rely upon the implied obligation of the city to use with due diligence its own agencies in procuring the means to satisfy his claims. It could not have been supposed that he was not only to earn his compensation, but also to set in motion and keep in operation the several agencies of the city government, over whom he had no control, to place in the hands of the city the funds necessary to enable it to pay its obligations. That was a power lodged in the hands of the city, and the clear intent of the contract was that it should exercise it diligently for the purpose of raising the funds necessary to pay for the improvement. For an omission to do so it would become liable to pay such damages as the contractor might suffer by reason of its neglect of duty.' And see, as supporting the same proposition" (citing a large number of cases).

While defendant has cited authorities to sustain its contention that plaintiff should have proceeded by mandamus, we must decline to follow them. To our minds it is unreasonable to say that a city may deliberately fail to perform

a plain statutory and contractual duty, and then escape responsibility by saying that the contractor should have, by mandamus, compelled it to perform that duty.

2. Defendant's second contention is that the plaintiff's action was barred by the statute of limitations, for the reason that more than five years had elapsed from the date of the issuance and delivery of the warrants to the time of the commencement of the present action. And it is insisted that, if the special assessment was void, plaintiff was bound to know that fact, and that the action should have been brought within five years thereafter. It is also insisted that this court, in *Rogers v. City of Omaha*, 75 Neb. 318, has held that the statute commences to run at the expiration of a reasonable time within which the mayor and council should have created the fund and issued the warrants. In this counsel are in error. While we held in that case that the statute did not commence to run "until the lapse of a time reasonably sufficient for the creation of a special fund for the payment of such damages," we also distinctly said: "What degree of wilful delinquency or delay, if any, in this respect, would amount to a default of payment entitling a property owner to sue on the award is not now necessary to be determined, because it does not appear that any such occurred until well within the five-year period of limitations. Nor is it necessary to determine what was the effect, if any, upon the operation of the statute of limitations, of the taking possession of the land by the city without having in fact provided a fund for the payment of damages." We also said: "But we think the decision in *City of Omaha v. Clarke*, 66 Neb. 33, is distinguishable from the case at bar. In that case it was contended that the cause of action accrued at some earlier date than that of the order confirming the award, and apparently it was also contended that the order did not constitute an obligation in writing. The court overruled both these contentions, but they did not determine, and seemingly their minds did not advert to, the question, when does a cause of action upon the award arise? It may not

be necessary definitely to decide that question now." And in *Abrahams v. City of Omaha,* 80 Neb. 271, we said: "This action was begun November 23, 1898, so that the five years' interval began between the time of the completion of the work and the issuance of the warrants. We think the warrants executed and delivered by the competent city authority are a written acknowledgment of the claim and a promise to pay it which is obligatory upon the city, and arrested the running of the statute of limitations, if the running of the latter had previously begun, which we do not decide."

It will be seen from this that we have not decided the question as to when the statute of limations begins to run in a case of this character. All that we have decided in the cases referred to is that, under the facts appearing in each of those cases, the statute had not run against plaintiff's cause of action. A careful consideration of this question leads us to the conclusion that the statute of limitations does not commence to run against warrants issued by a municipal corporation, payable out of a special fund to be created, until such fund has in fact been created, and there is sufficient money in the fund with which to pay the warrants. *Robertson v. Blaine County,* 90 Fed. 63; *Wetmore v. Monona County,* 73 Ia. 88; *Board of County Commissioners v. Clarke & Courts,* 12 Okla. 197, 70 Pac. 206; *Hubbell v. City of South Hutchinson,* 64 Kan. 645, 68 Pac. 52; *Barnes v. Turner,* 14 Okla. 284, 78 Pac. 108; *Potter v. New Whatcom,* 20 Wash. 589. In the light of these authorities, defendant's plea of the statute of limitations must fail.

The judgment of the district court is right, and should be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.