## BOARD OF COM'RS OF LOVE COUNTY v. WARD et al.

No. 8356—Opinion Filed June 11, 1918.

Rehearing Denied July 23, 1918.

(173 Pac. 1050.)

(Syllabus.)

**1. Counties — Wrongful Collection of Taxes —Liability of County.**

In the absence of a statute imposing liability therefor, a county is not liable for taxes wrongfully collected by a county treasurer, and by him paid over to the state or a municipal subdivision of the state other than the county against which liability is sought to be imposed.

**2. Taxation — Voluntary Payment — Recovery.**

Where certain citizens of the Choctaw and Chickasaw Nations paid certain taxes assessed against their respective allotments, which were nontaxable, in order to avoid a threatened sale of their lands and in order to avoid the imposition of penalties thereon for failure to pay said taxes, and where at the time of said payment there was pending litigation seeking to enjoin the collection of said taxes, and where at the time said parties were fully informed as to the law which made said taxes illegal, and there was no immediate necessity for the payment of said taxes to prevent a seizure of the person or property of said persons, held, that said payment was voluntary, and in the absence of statutory authority therefor cannot be recovered back.

Error from District Court, Love County; W. F. Freeman, Judge.

Proceeding by Coleman J. Ward and others and C. A. Greenlees, trustee, against the Board of County Commissioners of Love County, Okla., upon a claim for a refund of taxes. The claim was disallowed by the board, and claimants appealed to the district court, wherein a demurrer to the petition was overruled, and judgment rendered for claimants, and defendants bring error. Reversed.

T. B. Wilkins, Co. Atty., for plaintiff in error.

J. E. Bennett, for defendants in error.

HARDY, J. This proceeding was commenced by defendants in error filing with the board of county commissioners of Love county a claim for refund of taxes alleged to have been erroneously paid to the county treasurer of Love county. The claim was dis-

allowed by the board of county commissioners, and claimants appealed to the district court, where demurrer to the petition was overruled, and judgment rendered in claimants' favor, from which judgment this appeal is prosecuted.

Plaintiff in error contends that the board of county commissioners were without jurisdiction and authority to entertain or file a claim and order a refund of said taxes, and that the district court acquired no such jurisdiction upon appeal. Section 14, c. 152, Session Laws. 1910-11, undertook to confer upon the boards of county commissioners of the various counties of this state authority to refund any taxes which had been erroneously assessed against property and paid. This section, in so far as it undertook to confer such power upon the board of county commissioners, was held to be unconstitutional in Johnson v. Grady County, 50 Okla. 188, 150 Pac. 497, which holding has been adhered to in the following cases: Atoka County v. Oklahoma State Bank, 62 Okla. 57, 161 Pac. 1087; In re Hickman, 63 Okla. 14, 162 Pac. 176; Smith v. Board of Com'rs of Garvin Co., 62 Okla. 120, 162 Pac. 463; In re Assessment First National Bank, 64 Okla. 208, 166 Pac. 883.

Defendants in error say, however, that sections 1 and 2 of chapter 186, Session Laws 1913, p. 416, confers authority upon the board of county commissioners to allow and order paid the demands which form the basis of this litigation. These sections were not called to the attention of the court, nor considered in any of the decisions cited. Assuming that the contention of the defendants in error is correct, the judgment of the district court must be reversed, for two reasons: First, when section 14 of chapter 152, Laws 1910-11, was held to be invalid there existed no statute making the county liable for the full amount of taxes collected by the county treasurer. When taxes are collected the county treasurer makes settlement with the state and the various municipalities thereof, paying to each that portion of the taxes properly belonging to it, and does not pay into the county treasury any of the taxes collected by him, except that portion which is properly payable to the county. The petition does not separate the taxes so as to show what portion was paid to the state and to the various municipalities respectively. While the petition alleges that Love county caused the county treasurer to collect such taxes, and seeks to hold the county for the full amounts paid by claimants, there is no warrant in law for saying that the county should refund taxes which were not paid over to it.

There is another reason why claimants cannot recover, because these taxes were voluntarily paid, and were not paid under duress, coercion, or compulsion such as would authorize their recovery back. It is alleged that claimants were citizens of the Choctaw and Chickasaw Nations of Indians, and as such citizens had received allotments of the lands of such nations, which lands were nontaxable, while the title thereto remained in the original allottee, but that, notwithstanding the fact that said lands were nontaxable and in violation of the laws relating thereto, said lands were assessed for taxation, and taxes levied against them by the officers of Love county for the years 1908, 1909, 1910, and 1911 and for succeeding years; that upon said lands being assessed for taxation certain citizens of the Choctaw and Chickasaw Nations commenced an action in the superior court of Logan county to enjoin and restrain the tax officials from assessing their lands for taxation, and from enforcing the collection of taxes levied thereon; that said litigation was finally prosecued to a successful termination in favor of said citizens (Choate v. Trapp, 224 U. S. 665, 32 Sup. Ct. 565, 56 L. Ed. 941); that various other actions and proceedings were commenced in different courts to enjoin and restrain the collection of said taxes, but that notwithstanding the pendency of said litigation, Love county, through its officers in each of said years, did require claimants to pay to the treasurer of said county the taxes levied upon their respective allotments, and contended and threatened that, if same were not paid, the lands of claimants would be sold for nonpayment thereof, and claimants, fearing that said lands would be sold, and fearing that said lands were taxable, paid said taxes under protest to the county treasurer of Love county, and that said county treasurer at the time well knew that said actions were still pending and undetermined in the state and federal courts wherein they sought to enjoin the collection of said taxes. It is further alleged that said taxes were paid for the purpose of preventing a heavy penalty provided by the laws of this state being imposed against claimants for nonpayment thereof, and that said taxes were paid in order to protect themselves from great loss and damage in the event such action which was pending to restrain the collection thereof was decided against them. These allegations contain in substance all of the material facts with reference to the manner

of the collection and payment of the taxes, a refund of which is claimed herein.

In Johnson v. Grady County, supra, the action was to recover certain taxes paid to Grady county on lands allotted to a citizen of one of the Five Civilized Tribes. The payment in that case was held to be voluntary. Upon rehearing it was said:

"As to the second ground raised by plaintiff, relative to the recovery of taxes voluntarily paid, we note the distinction attempted to be drawn between an erroneous tax and an illegal tax; but we see no reason why we should recede from our former holding on this question, as our courts have spoken fully on that particular point and held against plaintiff's contention. See original opinion for authorities. The tax sought to be recovered in this case was paid upon land. It is difficult to see how a person could plead coercion or duress in the payment of such a tax. A tax upon personal property or a franchise might be coerced, but it appears impossible that such a contingency could arise in a land case, and most assuredly no duress, coercion, or even protest has been shown in this case."

In Phillips v. Board of Com'rs of Jefferson Co., 5 Kan. 247, money was paid to the county treasurer to redeem tax sale certificates of lands sold for taxes which were Indian lands and not liable to assessment and taxation, and at the time the money was paid over the owner of the land denied the legality of the tax on the ground that the lands were not taxable, and paid the money to prevent tax deeds, which were then due, from being made for said lands, and under these circumstances it was held that the payment was voluntary, and could not be recovered back. This holding was approved by the Supreme Court of the United States in Lamborn v. Dickinson County Commissioners, 97 U. S. 181, 24 L. Ed. 926, where, after referring to the case of Phillips v. Jefferson County, and declaring its intention to follow that rule, the court referred to the fact that it had been held in other states, though perhaps not directly adjudged, that the payment of illegal taxes on land to avoid or remove a cloud upon the title arising from a tax sale was a compulsory payment, and distinguished the case of Stephan v. Daniels, 27 Ohio St. 527, by calling attention to the fact that in that case plaintiff relied upon the provision of a local statute, and that a legal tax was combined with an illegal assessment, and that the sale would perhaps have conferred a valid title upon the purchaser. The court further said:

"Where such would be the effect of a tax sale, we cannot doubt that a payment of the tax, made to prevent it, should be regarded as compulsory and not voluntary. The threatened divestiture of a man's title to land is certainly as stringent a duress as the threatened seizure of his goods; and, if imminent, and he has no other adequate remedy to prevent it, justice requires that he should be permitted to pay the tax, and test its legality by an action to recover back the money. But as, in general, an illegal tax cannot furnish the basis of a legal sale, the case supposed cannot often arise. If the legality of the tax is merely doubtful, and the validity of the sale would depend on its legality, according to the law of Kansas, the party, if he chooses to waive the other remedies given him by law to test the validity of the tax, must take his risk either voluntarily to pay the tax, and thus avoid the question, or to let his land be sold, at the hazard of losing it if the tax should be sustained. Having a knowledge of all the facts, it is held that he must be presumed to know the law; and, in the absence of any fraud or better knowledge on the part of the officer receiving payment, he cannot recover back money paid under such mistake."

The question was again considered by the Supreme Court in the case of Union Pacific Railroad Co. v. Dodge County Commissioners, 98 U. S. 541, 25 L. Ed. 196, where after quoting from the case of Wabaunsee County v. Walker, 8 Kan. 431, the following language was used:

"Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back. And the fact that the party at the time of making the payment files a written protest does not make the payment involuntary."

The court expressed its approval of the rule stated thus:

"This, as we understand it, is a correct statement of the rule of the common law. There are, no doubt, cases to be found in which the language of the court, if separated from the facts of the particular case under consideration, would seem to imply that a protest alone was sufficient to show that the payment was not voluntary; but on examination it will be found that the protest was used to give effect to the other attending circumstances."

And after reviewing a number of decisions the court put the question tersely thus:

"The real question in this case is whether there was such an immediate and urgent necessity for the payment of the taxes in controversy as to imply that it was made upon compulsion."

Attention was then called to the fact that, though the treasurer had a warrant in his hand, no demand had been made for the payment of the taxes, nor had seizure of the property occurred, and the court quoted with approval the language of Chief Justice Shaw in Preston v. Boston, 12 Pick (Mass.) 14:

"Where, therefore, a party not liable to taxation is called upon peremptorily to pay upon such a warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress, and not voluntarily, and, by showing that he is not liable, recover it back, as money had and received."

The petition herein contains no allegation that the county treasurer held a warrant in his hands for the collection of any taxes owed by claimants, nor that any property owned by them was about to be seized to enforce collection thereof. Indeed in the sale of land for taxes no warrant is issued, nor is the land seized, but the county treasurer simply advertises the land and sells same according to the provisions of chapter 7, article 9, Rev. Laws Okla. 1910. The allegations make it plain that the taxes were paid before the termination of the litigation which sought to enjoin the collection thereof, and that the motive which impelled plaintiffs to pay same was the fear that their contention that the lands were nontaxable might be decided adversely to them, and, if not paid, added penalties would be imposed for nonpayment; and while it is alleged that the county treasurer had threatened to sell said land, yet a sale thereof under an illegal tax would not have divested claimants' title, and the purchaser at the tax sale would be compelled to resort to an action for possession, and claimants could have successfully defended against such action by showing the illegality of the tax which formed the basis of the sale. Claimants were familiar with all the provisions of the laws and treaties which exempted their lands from taxation, and the sole contention between them and the taxing officers was whether under the law said lands were subject to taxation. In determining whether taxes have been paid voluntarily or under compulsion, it is not enough to say that they have been paid unwillingly and only as a choice between evils, and when it is sought to recover back a payment as having been made under compulsion, it is generally necessary to show that payment was made to relieve either person or property from the power of the officers or to prevent a seizure of his person or property, unless this rule has been changed by

statute, and such was not the situation of claimants. 2 Cooley Taxation (3d Ed.) 1501.

For the reasons given, the judgment is reversed.

All the Justices concur.