### CARTER, State Auditor, v. COLLINS.

No. 22123.   July 2, 1935.

Rehearing Denied Oct. 1, 1935.

J. Berry King, Atty. Gen., and F. M. Dudley, Asst. Atty. Gen., for plaintiff in error.

C. N. Haskell, Edward Hirsh, Leon S. Hirsh, F. H. Brigham, and Leverett Edwards, for defendant in error.

C. W. King, for Oklahoma Tax Commission, amicus curiae.

WELCH, J.   The plaintiff is a citizen by blood of the Choctaw Tribe of Indians of 1/32 quantum of Indian blood.

In the years 1917 to 1923, inclusive, plaintiff paid gross production taxes to the state on oil produced from his allotment of land in the total amount of $5,842.33. Plaintiff claims that such oil production was exempt from such tax, and here seeks recovery of the sums paid. Plaintiff did not pay such tax under protest and seek recovery thereof as authorized by sections 12665 and 12666, O. S. 1931, which were in force when the tax payments were made. Plaintiff bases his action on section 3, chapter 20, S. L. 1925, section 12442, O. S. 1931, which provides as follows:

"In all cases of overpayment, duplicate payment or payment made in error on account of the production being derived from restricted Indian lands and therefore exempt from taxation, the State Auditor, by and with the approval of the State Board of Equalization, after an audit by the State Examiner and Inspector, is authorized to refund any such overpaid, duplicate or erroneously paid gross production taxes out of any gross production tax funds in his hands from the same county from which the original tax was derived and not ap-

portioned to the State Treasurer to be distributed as provided by law."

That act became effective April 2, 1925. Thereafter plaintiff presented his claim for refund, which was audited and certified by the State Examiner and Inspector, and came on for hearing before the Board of Equalization. That board made its order refusing to allow the claim and approve it for payment on October 1, 1925, assigning in its order five stated reasons why, in the judgment of that board, such claim was not entitled to be allowed under the quoted act of 1925.

Plaintiff took no further action until April 28, 1930, when he presented same again, or called it to the attention of the then State Board of Equalization. That board referred the matter to the Attorney General for advice as to whether the claim should then be approved. The record does not disclose whether any advice was received, but, at any rate, that board took no further action in the matter, and on December 4, 1930, plaintiff commenced this action.

The defendant asserted various defenses, among others, that the 1925 act was not retroactive; that the moneys collected from plaintiff were, upon collection, duly apportioned and distributed to the several funds and departments, both state and county, entitled to receive the same, and had all been expended long prior to any effort on the part of plaintiff to recover the same; and the defense of the statute of limitation.

The trial court found for the plaintiff, and the defendant, on appeal, urges these defenses as a bar to plaintiff's recovery. The defense of the statute of limitations is controlling, and the other assignments need not be discussed.

The rule seems to be well recognized that the state may plead and rely on the statute of limitations. See Cowles v. State, 115 N. C. 173, 20 S. E. 384; Baxter v. State, 10 Wis. 454; Stanly v. Schwalby, 85 Tex. 352, 19 S. W. 264; Stanly v. Schwalby, 147 U. S. 508, 13 Sup. Ct. 418, 37 L. Ed. 259; Smith v. Aud. Gen., 80 Mich. 215, 45 N. W. 136. See 19 A. & E. Enc. of Law, 191 and 192, and McRae v. Auditor General (Mich.) 109 N. W. 1122. In the last cited case the Supreme Court of Michigan held:

"A claim against the state is subject to the same statute of limitation that the claim if against a private individual would be."

And in the body of the opinion that court said:

"No good reason is suggested for saying that the claim of a private person against the state should not be subject to the same statute of limitation that the same claim against another private person would be. On the contrary, the rule that the government may plead such statutes prevails generally."

See, also, Ward v. Love County, 253 U. S. 17, wherein the Supreme Court of the United States recognized the right of the state of Oklahoma, or of Love county, to plead the statute of limitation in an action by an Indian citizen to recover taxes paid.

While it may be true that in their beginning statutes of limitations were not received and looked upon favorably by the courts (17 R. C. L. 664), and in some jurisdictions in the past the defense of the statute of limitations has not been treated with the same favor as ordinary defenses (17 R. C. L. 668), yet undoubtedly the rule is now well recognized to be that:

"As a general rule, however, statutes of limitations are now considered as wise and beneficent in their purpose and tendency, and as furnishing a defense as meritorious as any other and one to which all men are entitled as a right." (17 R. C. L. 668.)

See, also, Neff v. Willmott et al., 170 Okla. 460, 41 P. (2d) 86.

Without any regard to the original correctness or justness of claims or causes of action, the various state and federal courts have held many actions barred by the statute of limitations, when it was clear that the Legislature's intention was expressed to be that such statutes should be absolute bars. Our laws make the statutory bar absolute, and clearly express the intention so to do.

Note the following partial quotations from our statutes:

"Civil actions can only be commenced within the periods prescribed in this article," etc. (98, O. S. 1931.)

And "Actions * * * can only be brought within the periods hereinafter prescribed * * * and at no time thereafter." (99, O. S. 1931.)

And in section 101, O. S. 1931, the applicable section here:

"Civil actions, other than for the recovery of real property can only be brought within the following periods * * * and not afterwards."

And again in section 108, O. S. 1931, it is provided in part:

"When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense."

The statute begins to run from the accrual of the cause of action.

There is no strict necessity to determine whether plaintiff's cause of action accrued when he paid the taxes, or when the 1925 act became effective, or when his claim was audited and certified to the State Board of Equalization, or when on October 1, 1925, that board refused to allow and pay it for the reasons assigned in its order of that date. Under either conclusion the action was not commenced until more than five years had elapsed.

The plaintiff bases his action on the quoted legislative act of 1925. Under subdivision 2 of section 101, the period of three years is allowed to bring an action upon a liability created by statute, while the longest period allowed for the bringing of any action other than for the recovery of real property is five years. The statute as above quoted is positive that the lapse of the prescribed time may be raised as an effective and absolute bar to the action.

To avoid the bar of the statute the plaintiff asserts that his cause of action did not accrue on October 1, 1925, because the order of the Board of Equalization of that date was not an unequivocal refusal to allow the claim for refund. The order in question dealt with numerous claims, and at length, it did not state in so many words that plaintiff's claim was disallowed, and for that matter the act does not specifically require that the board shall order the claim allowed or disallowed. The order was pleaded in full, and agreed by the parties as being the order entered. An examination of it, in its entirety, shows beyond any question that the board did consider plaintiff's claim, and did refuse to allow and order it paid, for five reasons stated at length. The order is in nowise susceptible of the construction that the board merely reserved the claim for further consideration. The failure and refusal of that board to approve the claim, as shown by that order, was certainly such a refusal as to be sufficient to entitle plaintiff then to sue, if he were otherwise entitled to bring an action to obtain a refund of these taxes. That being true, the plaintiff's cause of action arose not later than October 1, 1925, when the board made that order.

The plaintiff attaches importance to the action taken on this claim in 1930 by the then State Board of Equalization. The facts in reference thereto are as follows: That on April 28, 1930, the attorneys for claimant appeared before the board as then constituted, and directed attention to plaintiff's claim presented in 1925, and sought to have it then allowed and paid. That board, as shown by the minutes of its meeting, read the former order of October 21, 1925, and finding that since that date no action on the claim had been taken by the claimant, or by any one else, the matter was referred to the Attorney General for an opinion as to whether the claim should be approved or disapproved. As to this action of the board the plaintiff here presents two propositions: (1) That "the board did not definitely refuse to act until December, 1930"; and (2) if the action had been theretofore barred, "the reconsideration of the claims on April 28, 1930, began a new right just as the acknowledgment of a barred debt removes the former bar of the statute of limitation."

We are unable to find any foundation in the record for the plaintiff's contention that the board did not definitely refuse to act until December, 1930. The record discloses no action by the board of any kind in December, 1930. To the contrary, the record affirmatively shows that the board took no action whatever in the matter after April 28, 1930, and that the only action taken on that date was to make a request of the Attorney General for advice. As to the contention that the reconsideration on April 28, 1930, began a new right and removed the bar of the statute of limitation, we assume that contention is based upon the provisions of section 107, O. S. 1931. That section provides as follows:

"In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

It is not certain that public officers could effectively bind the state to a reinstatement of a claim barred by the statute, but, in any event, the action taken by the Board of Equalization on April 28, 1930, was in no sense an acknowledgment of an existing liability, debt, or claim, nor any promise to

pay the same. It was not in strict sense a reconsideration of plaintiff's claim. It was nothing more than a recitation upon the minutes that plaintiff's attorneys had directed the attention of the board to the claim, and that the board concluded to seek the advice of the Attorney General as to the matter. It is evident that the then members of the State Equalization Board were not familiar with plaintiff's claim, nor the details thereof, until it was called to their attention on that date, and then observing that the claimant had taken no further action since presenting the matter in 1925, they might well have desired advice from the Attorney General as to what action the board should take, or whether the board should act at all. In that action taken, there is nothing whatever to indicate a definite refusal of the claim, or definite refusal to act, nor is there the slightest acknowledgment of an existing liability, debt, or claim such as could be relied upon to reinstate or reestablish a claim barred by the statute. The law is well settled that a new acknowledgment of a debt, in order to be effective under the statute, must be clear, unequivocal, and unqualified, and must be an admission of a present liability or claim. McKennon v. McKennon, 104 Okla. 228, 231 P. 91; American Surety Co. v. Steele, 84 Okla. 166, 203 P. 1043.

We conclude that the action taken by the board in 1930 is wholly immaterial to the controlling question.

The plaintiff next contends that his cause of action did not accrue "until the decision of the Supreme Court of the United States in Carpenter v. Shaw on January 6, 1930" (280 U. S. 363, 74 L. Ed. 478). We see no merit in this contention. Plaintiff's right to an exemption of his oil from the gross production tax was fixed by the laws applicable in 1917 to 1923, when he paid the tax, and did not depend upon nor arise from the decision of the court in the Carpenter Case upholding the exemption. The plaintiff himself fully understood his claim of exemption when he presented his claim for refund in 1925. The State Legislature quite evidently understood and considered the matter in the adoption of the above-quoted act. We are unable to follow plaintiff in his contention that he can base his action for refund upon the 1925 act of the State Legislature, and upon his claim presented in 1925, but that his cause of action for the refund and upon the claim did not arise or accrue until the decision of another case between other parties in the year 1930. The plaintiff cites no

authorities to sustain this contention, and our research discloses none.

We therefore conclude that plaintiff's cause of action accrued, in any event, not later than October 1, 1925, and was long since barred by lapse of time prior to the commencement of this action on December 4, 1930.

The plaintiff contends that his action cannot be barred because the action is for mandamus, and that the statute does not apply to such action. We observe that, although the action is designated as one in mandamus, and is in form mandamus, yet it is nothing more nor less than an action by Vernon Collins, the designated plaintiff, to enforce collection of his claim for a refund of the money involved. The action is brought in mandamus form to enforce payment of the specific claim, perhaps because an action for a general money judgment against the state will not lie.

We have no statute specifically fixing the time within which an action in mandamus may be brought, but the true rule must be that an action in mandamus will be held too late, unless brought in the time within which ordinary actions to enforce like rights may be brought under the statutes, and that after the statutory time has expired within which a right could be enforced by ordinary legal action, such right may not thereafter be enforced by an action in the form of mandamus. The writ of mandamus is ordinarily resorted to for the purpose of compelling the mere performance of an official act which the plaintiff in a given case had a clear right to have performed. While it is true that we have come to a more or less customary use of the writ to require state officials to pay claims, we think the courts should enforce the rule that after the statutory time has expired within which an ordinary civil action could be brought for recovery on a claim for money, thereafter the person claiming the same could not have relief by mandamus. We know of no authority by text-writers or adjudicated cases sustaining the right of a person to bring an action in mandamus and thereby collect money due him after the time has expired within which an ordinary legal action on a similar claim could be brought, as between individuals.

In the case of the ordinary or more usual cases in mandamus, that is, to require the mere performance of an official act by an officer under clear duty to perform the act, the statutes of limitation are sometimes said

to have no application. In most, if not all such cases, the duty of the officer to perform the act is a continuing duty, and although the person entitled to have that duty performed may for a time abide its nonperformance without seeking by mandamus to compel its performance, since the duty is continuing, and 'in a sense he has a new right to have performance on each succeeding day, he may in such case bring his action in mandamus when he chooses, without regard to the statute of limitation, there being no such statute strictly applicable to such a case. So there has arisen the oft-stated rule that mandamus actions are barred, not by express statute of limitations, but by the rule of laches, or the sleeping upon a right.

In the modern practice, where a claimant resorts to the writ of mandamus to collect money due, as in the case at bar, we think the rule is and should be that in such case the action, though it be in form in mandamus, is barred after the time when an ordinary civil action to enforce the same or a similar right is barred by the statute. In Wenner v. Board of Education, 25 Okla. 515, 106 P. 821, this court considered an action in mandamus to require the treasurer of a board of education to pay certain judgments. More than five years had elapsed since the judgments were rendered. The general statute as to judgments provided that a judgment became dormant five years after rendition, or after the last suing out of a writ of execution. These judgments having been rendered against a municipality, no execution could be sued out thereon. Yet this court held that the action in mandamus was barred because the statutory time had passed for ordinary proceedings upon the ordinary judgment between individuals, and in reference thereto the court in paragraph three of the syllabus held:

"The right to prosecute the writ for such a purpose is limited to the same period of time within which execution may be sued out on a judgment against individuals."

To the same effect is the holding in Beadles v. Smyser, 17 Okla. 162, 87 P. 292; Beadles v. Fry, 15 Okla. 428, 82 P. 1041, and in Field v. Oswego Twp. (Kan.) 28 Fed. 55.

The rule, then, is that if a person holding a judgment against a municipality desires to proceed thereon in mandamus, he must take action within the same period of time as he could proceed on a judgment against an individual, or his action in mandamus would be held to be barred. We

think a logical following of that rule would require that any person having a claim against the state, or its officials, desiring to proceed in mandamus for the collection thereof, must take action within the same period of time allowed him by the statute of limitation if his claim were against an individual, and that after such limitation period has fully passed, then his action in mandamus should be barred.

At page 37, High's Extraordinary Legal Remedies (3d Ed.) section 30b, it is said:

"The authorities are somewhat conflicting upon the question whether proceedings in mandamus fall within the statutes of limitation which govern ordinary actions against the same persons or concerning the same rights. The better considered doctrine and that which is supported by the clear weight of authority is that the writ of mandamus is no longer a prerogative remedy, and that it is a mere civil action at law in cases where it affords appropriate relief. And the weight of authority supports the proposition that the statutes of limitation which govern the subject-matter or right in question, and which would bar an ordinary action at law for the enforcement of such right, apply also to proceedings in mandamus for its enforcement."

And in 38 C. J. 832, appears the following:

"* * * In states where the statutes of limitation are inapplicable to mandamus proceedings, the courts have frequently applied them by analogy to mandamus proceedings as is done in equity cases, and while it is difficult to lay down any fixed rule as to the time when the writ will be barred, it may be said in a general way that it must be brought within the period fixed for that particular form of civil action or proceedings which may be brought to enforce the right which is the subject of the writ. * * *"

In McRae v. Auditor-Gen. (Mich.) 109 N. W. 1122, the Supreme Court of Michigan considered an action in mandamus against the Auditor-General of that state to recover a refund of moneys deposited upon a contract of purchase. One of the grounds of defense interposed to the action was that the claimant was barred by the statute of limitations. The statute of limitations of that state barred such an action as between individuals after six years. The court in the first and second paragraphs of the syllabus held:

"A claim against the state is subject to the same statute of limitation that the claim if against a private individual would be.

"Mandamus by a purchaser of the state's

bid for delinquent taxes on condition that if the premises should not be redeemed before a specified date he should be entitled to a deed, and if the same should be redeemed before that date he should be entitled to the redemption money, to compel a refunding of the taxes paid as a statutory condition on which he might purchase, is barred in six years from the time of the accrual of the right to demand a refunding, the writ being in effect an action at law against the state."

And in the body of the opinion, at page 1123, the court said:

"The claim of the relator arises from a contract of purchase, his contention being that, by the terms of the statute under which it was made, the subsequent redemption gave him a right to have the consideration paid refunded by the state. Were this a claim against a private person, assumpsit would be his remedy, and an action would be barred in six years from the time when the right accrued. In such a case mandamus would not lie, for want of another remedy. If it may be resorted to here, it must be upon the ground that an action cannot be brought against the state by a private person, and that mandamus is a proper remedy by which that rule may be avoided, if not evaded. To this must be added the claim that the statute of limitations must be restricted to actions of debt or assumpsit, and has no application to a case where mandamus may be made to perform the function of such an action, inasmuch as mandamus is neither an action of debt nor assumpsit.

"No good reason is suggested for saying that the claim of a private person against the state should not be subject to the same statute of limitation that the same claim against another private person would be. On the contrary, the rule that the government may plead such statutes prevails generally. See Cowles v. State, 115 N. C. 173, 20 S. E. 384; Baxter v. State, 10 Wis. 454; Stanley v. Schwalby, 85 Tex. 352, 19 S. W. 264; Stanley v. Schwalby, 147 U. S. 508, 13 Sup. Ct. 418, 37 L. Ed. 259; Smith v. Aud. Gen., 89 Mich. 215, 45 N. W. 136. See 19 A. & E. Enc. of Law, 191 and 192.

"Were this a suit in equity, the rule that equity follows the law would apply, and the statute would in effect be applied by analogy. Such has been the holding of this and many other courts. 'Especially, where a party has once had an adequate remedy at law, of which he might have availed himself in the ordinary forum, equity will deny any relief to him because of his own laches and neglect, whatever the intrinsic merits and equities of his case may be, and

will not permit him so to evade the plain provisions of the statute.' 19 A. & E. Enc. 157, and note; Blanchard v. Church, 47 Mich. 644; Jenny v. Perkins, 17 Mich. 28; Smith v. Davidson, 40 Mich. 632, Beach on Trusts, sec. 668.

"To all intents and purposes this writ is made to play the part of an action at law against the state. The writ of mandamus is a discretionary writ, and will not be issued when inconsistent with justice. To that extent, though a legal process, it is governed by equitable principles, and should not be used where legal redress would ordinarily be barred by the statute of limitations. The equitable doctrine of laches should in such case be applied."

Section 101, Okla. Stat. 1931, was adopted from Kansas, and at the time we adopted the same the Supreme Court of Kansas had construed the application of subdivision 2 thereof in a suit to recover payment of illegal taxes. See Richards v. Board of Commissioners of Wyandotte County, 28 Kan. 326, in which the court stated the facts involved as follows:

"In the year 1869, taxes were levied upon certain land in Wyandotte county, and in 1870 the same was sold for such taxes, the plaintiff being the purchaser. Afterwards the plaintiff paid the taxes assessed against this land for the years 1870, 1871, and 1872. During the years 1869, 1870, 1871, and 1872 the land was 'Indian land,' and not subject to taxation, and hence the taxes levied upon it were illegal and void. In 1875 it was discovered by the county clerk, the county treasurer, the county commissioners, and the plaintiff that the taxes were illegal, but both the county treasurer and the county commissioners refused to refund the same to the plaintiff; and hence an action accrued in favor of the plaintiff and against the treasurer and board of county commissioners for the amount of the taxes paid by him, with interest thereon. Comp. Laws 1879, p. 1058, sec. 120. The plaintiff commenced this action against the board of county commissioners and the treasurer on February 28, 1880."

And held as follows:

"Held, that the action was barred, as against the board of county commissioners, by the statute of limitations, at the time the action was commenced; and, if not barred by the two-year statute of limitations (Comp. Laws 1879, p. 281, sec. 47), then it was barred by the three-year statute of limitations (Civil Code, sec. 18, subd. 2); that the action is one founded 'upon a liability created by statute, other than a forfeiture or penalty;' and, so far as the county commissioners are concerned, it is not

'an action upon any agreement, contract, or promise in writing'."

As to the effect of valid local statutes of limitations as a bar to the recovery of refund of taxes illegally exacted of allottees of nontaxable Indian lands, see Ward v. Board of Com'rs of Love County, 253 U. S. 17, on review from the Supreme Court of Oklahoma, Board of Com'rs of Love County v. Ward, 68 Okla. 287, 173 P. 1050. In the opinion it was said:

"The county calls attention to the fact in the demurrer to the petition the statute of limitation (probably meaning sec. 1570, Rev. Laws 1910) was relied on, This point was not discussed by the Supreme Court, and we are not concerned with it beyond observing that when the case is remanded, it will be open to that court to deal with the point as to the whole claim or any item in it as any valid local law in force when the claim was filed may require."

When that case was returned to this court on mandate from the Supreme Court of the United States no further proceeding was had in this court and no further opinion was rendered here. It therefore appears that the claim of the statute of limitations was without foundation in fact in that case, but the quoted paragraph is authority for the fact that any valid legal law would be applicable, and would stand as a bar to an action for the recovery of taxes illegally paid, if the facts made the statute applicable.

It seems to me that the Legislature, in adopting section 3, chapter 20, S. L. 1925, in view of the concluding words of that section, might not have intended that it have any retroactive effect, but intended, upon the other hand, that a refund should be made when claims were promptly made before distribution of the gross production tax collected, and that the Legislature might have intended that the act have no application except as to subsequent collections.

And in any event, if that section is given every construction favorable to the plaintiff in this action, it seems beyond question that the applicable limitation statute is section 101, O. S. 1931, second subdivision, three years, and that the statutory period began to run either upon the effective date of the act, April 2, 1925, or upon the making of the order above noted on October 1, 1925. We can see no other subsequent date when we could say the plaintiff's cause of action accrued, or when we could say that any right arose in his behalf.

We have in this state but two forms of action, that is, civil and criminal. Sections 11, 12, and 13, O. S. 1931. The form of all civil actions and suits is specifically abolished, and we have but one form of action, "which shall be called a civil action." Section 4, O. S. 1931.

As we construe it, we are dealing here with a civil action for the recovery of money as a refund thereof, or to enforce payment of a claim for money, and regardless of its form, we hold it to be such a civil action as was intended to be barred by the provisions of section 101, O. S. 1931.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded, with directions to dismiss.

OSBORN, V. C. J., and RILEY, BAYLESS, PHELPS, and GIBSON, JJ., concur. McNEILL, C. J., and CORN, J., dissent. BUSBY, J., absent.

McNEILL, C. J. (dissenting). This case involves the question of a refund of gross production taxes exacted from Indian land while exempt from taxation.

Plaintiff invoked our original jurisdiction in mandamus to compel the State Auditor to refund the gross production taxes in question, which had been levied and collected on the production of oil and gas from certain lands allotted to plaintiff while he was the owner thereof. Plaintiff was a citizen by blood of the Choctaw Nation, being a 1/32 quantum of Indian blood. The taxes covered the years from 1917 to 1923, inclusive,. and amounted to the sum of $5,842.33. Plaintiff paid the same under the theory, which was more or less prevailing at that time, but nevertheless erroneous, that such production was not exempt from a gross production tax. The power of the state officials to tax such lands had been questioned, but the state courts had given sanction to this theory. See Love County v. Ward, 68 Okla. 287, 173 P. 1050, which was reversed by the Supreme Court of the United States. Ward v. Love County, 253 U. S. 17, 64 L. Ed. 741. The case of Carpenter v. Shaw, 280 U. S. 363, 74 L. Ed. 478, decided by the Supreme Court of the United States on January 6, 1930, set at rest the question of the power of the state to impose a gross production tax on the oil and gas derived from an Indian allotment while the title remained in the original allottee within 21 years from the date of the patent.

In 1925, the State Legislature passed an act, chapter 20, S. L. 1925, providing for refunding certain gross production taxes

which had been collected on account of the production derived from restricted Indian land. Section 3 of said act provided:

"In all cases of overpayment, duplicate payment, or payment made in error on account of the production being derived from restricted Indian lands and therefore exempt from taxation, the State Auditor, by and with the approval of the State Board of Equalization, after an audit by the State Examiner and Inspector, is authorized to refund any such overpaid, duplicate or erroneously paid gross production taxes out of any gross production tax funds in his hands from the same county from which the original tax was derived and not apportioned to the State Treasurer to be distributed as provided by law."

Within 60 days after the passage of said act plaintiff, pursuant to said legislative enactment, made an application for refund of his gross production taxes paid by him on the oil and gas produced from his tax exempt land.

The State Examiner and Inspector audited and certified the claim of plaintiff, and the same was then presented to the State Board of Equalization for approval or disapproval. On October 1, 1925, said board entered the following order:

"Order.

"Now, on this, the 1st day of October, 1925, the Board of Equalization of the state of Oklahoma being in session, the following claims for refunds, to wit:

"Osage Leases

* * * (other claims) * * * Vernon Collins, Ardmore, Oklahoma.

"$5,842.33—Gross production tax paid on allotment remaining in the hands of the original allottee. * * * (other claims) * * * comes regularly before the board for consideration; said applicants being represented by counsel; the board, after considering the statutes under which said claims for refunds are submitted, declines to consider or pass upon said claims, and each of them, for following reasons, to wit:

I.

"The Board is of the opinion that section 3, chapter 20, page 21, of Session Laws of Oklahoma, 1925, is not retroactive in effect and that, therefore, these claims, being based on overpayment, duplicate payment or payment made in error, as provided in said statute, should not be considered by the Board of Equalization, and the Board of Equalization of the State of Oklahoma, therefore, refuses to consider said claims and each of them, and pass upon their merits for the reason that the claims herein enumerated originated prior to the passage and approval of the legislative act above referred to, wherefore the provisions of the act in question do not apply thereto.

II.

"That the Constitution of the State of Oklahoma prohibits the use of current funds to pay claims arising in former years, without specific legislative appropriation therefor.

III.

"That all moneys derived or which will be derived from taxes for the current fiscal year, have been appropriated and there is no money now available, or will be available to pay said refunds, if allowed.

IV.

"That money appropriated for one purpose cannot be diverted or used for another purpose, and if these claims should be passed upon and allowed, the board holds it would be taking money already appropriated for another purpose and diverting it to the payment of these claims.

V.

"If a refund of taxes paid in previous years and coming within the classes specified in said act of the Legislature then the Legislature should have made appropriation to care for the same."

That order, in part, stated as follows:

" * * * The board * * * declines to consider or pass upon certain claims. * * *"

No question is presented as to procedural prerequisites, or correctness of amount, but reasons were assigned by the board as to the validity and construction of the act in question, which, in my opinion, were immaterial for the reason that said board was not acting as a judicial body, but only in an administrative capacity.

After the opinion was delivered in the case of Carpenter v. Shaw, supra, the matter was subsequently called to the attention of the Board of Equalization in reference to the claim of plaintiff, and the board, on April 28, 1930, again took cognizance of said claim and made the following record:

"Mr. Edwards requested the board to take action on the claims. The board read its order of October 1, 1925, and finds that no action had been taken on said claims, the matter was referred to the Attorney General for an opinion as to whether claims should be approved or disapproved under the law as now decided by cases since 1925."

It appears to me that this interpretation by this administrative department should have weighty consideration. The board had taken no action in approving or disapproving

the claim after the request of Mr. Edwards up to the time of the filing of the instant action on December 4, 1930. In fact, the State Auditor and State Board of Equalization were authorized to refund these payments received by the state without demand of a claim on the part of the plaintiff.

It is admitted that the plaintiff did not pay the tax under protest nor attempt to comply with the protest and a suit by law as provided by section 9971, C. O. S. 1921 (12665, O. S. 1931) ; but this is not a suit to recover taxes as contemplated by section 9971, C. O. S. 1921. It is an action to compel public officials to perform a statutory duty enjoined upon them.

The question arises in the instant action as to whether the royalty in oil and gas derived from a Choctaw—Chickasaw allotment is taxable so long as the allotment remains in the hands of the original allottee for 25 years from date of the issuance of the patent.

The majority opinion holds that the statute of limitations, section 185, C. O. S. 1921, is or should be applicable and bars the action of the plaintiff. I cannot agree with that conclusion. The power and jurisdiction of the state to collect the tax in question never incipiently existed. It was never in esse. The state was admitted into the Union with a limitation upon the taxing power of the state in respect to Indian lands.

These vested rights of property could not be nullified by the state and, after the Supreme Court of the United States had plainly spoken in reference to the coercive measures exercised by the state officials without authority of law in collecting the unauthorized and void tax, which had erroneously received the sanction of the state courts, the Legislature, in full recognition of the limitations imposed by Congress and the vested property rights which had been secured to the Indians within the protection of the Fifth Amendment of the Constitution of the United States, and which rights had been denied to these Indians in violation of the Fourteenth Amendment, passed the act in question, which rests upon justice and equity and the moral obligation which this state assumed in receiving its admission to the Union.

The instant act does not rest upon any contract between the state and the individual, directly or indirectly. It does not concern itself with money had and received, nor any implied promise on the part of the state to receive in trust that which had been illegally divested from the taxpayer who paid the tax, perhaps not under a formal protest, but nevertheless as a result of litigation which had been resorted to in the collection of such taxes and the correctness of which was not approved by the Supreme Court of the United States.

The only limitation placed upon the Auditor was that the State Examiner and Inspector should audit the payment which had been made by the taxpayer. When this audit met the approval of the State Auditor and State Board of Equalization, the State Auditor was authorized to refund the payment which had been made in error on account of production derived from the Indian land in question and which had been agreed to be exempt from taxation by this state upon its admission to the Union. This tax was authorized to be refunded from tax funds in the hands of the Auditor coming from the same county from which the original tax was derived. This void tax originally came from the county wherein the land was situated without authority or semblance of law, and if there were other funds derived from gross production taxes in the hands of the Auditor from the same county from which the void tax had been collected, the void tax so collected could be returned from the funds coming from the county which wrongfully received such tax.

In the case of Duke, Mayor, etc., et al. v. Turner et al., Feb. 25, 1907, 204 U. S. 623, which is the same case as Barnes, Mayor, et al. v. C. W. Turner and James A. Kirkwood, No. 1537, Supreme Court of Oklahoma, 14 Okla. 284, 78 P. 108, decided September 1, 1904, a proceeding in mandamus was brought in the district court of Logan county on July 23, 1903, against the mayor and councilmen of the city of Guthrie to compel them to levy a tax upon certain subdivisions of the city of Guthrie to create a fund to pay certain time warrants which had been issued on July 1, 1893, under the provisions of article 1, ch. 14, Statutes of 1890.

The Supreme Court of the United States affirmed the Supreme Court of Oklahoma in that case, and the opinion of the Supreme Court, written by Mr. Justice Day, after giving a history of the prolific litigation which had centered around the payment of these warrants bearing date of July 1, 1893, revealing that the enforcement of the collection of these warrants had been before the Supreme Court of the Territory of Oklahoma on three different occasions (see 5 Okla. 188, 13 Okla. 26, 14 Okla. 284), stated specifically as follows:

"The Supreme Court of the territory affirmed the judgment of the district court upon the ground that the statute of limitations, which is also the defense made in the case upon which the decision of the appeal to this court turns, did not begin to run in favor of the municipal corporation upon the obligation evidenced by· the warrants, until the municipality had provided funds by which payment could be made.

"The authorities are much in conflict as to whether a statute of limitations, without express words to that effect, governs a proceeding in mandamus as though it were an ordinary civil action. Some of the cases hold that the statute of limitations applies which would govern an ordinary action to enforce the same right.

"Other cases hold that the statute of limitations does not apply as it would to ordinary civil actions, but the relator is only barred from relief where he has slept upon his rights an unreasonable time, particularly when the delay has been prejudicial to the rights of the respondent. The cases pro and con are collected in a note to section 30b, High, Extraordinary Legal Remedies (3d Ed.).

"The question is not a new one in this court; it was under consideration in Chapman v. Douglas County, 107 U. S. 348, 2 U. S. Sup. Ct. Rep. 62. * * *

"The statute of limitations relied upon in the case at bar is the three years' limitation, contained in second paragraph, section 18, Oklahoma Code, 2 Wilson's Rev. Stat. 973, 975, as to statutory liabilities, and section 23, regulating the time for the beginning of a new action to one year after reversal or failure of a former action. These sections in article 3, 'Time of Commencing Civil Actions,' are as follows:

"'Section 18. Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

"'First. Within five years, an action upon any contract, agreement, or promise in writing.

"'Second. Within three years, an action upon a contract not in writing, express or implied; an action upon a liability created by statute, other than a forfeiture or penalty. * * *

"'Section 23. If any action be commenced within due time, and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if he die and the cause of action survive, his representatives, may commence a new action within one year after the reversal or failure.'

"The limitation to three years, said to be applicable here, is upon an action created by statute other than forfeiture or penalty, but this language is in a section limiting civil actions other than for the recovery of real property, and the language used in section 23 has reference to actions of like character.

"The proceeding in mandamus is regulated in article 33, Okla. Code, 2 Wilson's Revised & Anno. Statutes 1130. That the proceeding is not regarded as a civil action is shown in section 694, Code, 2 Wilson's Rev. & Anno. Stat. 1131, which provides that pleadings are to be construed and may be amended in the same manner 'as pleadings in a civil action,' and issues joined, tried, and the proceedings had, 'in the same manner as in a civil action.' The Oklahoma Code (section 687) also declares that writs of mandamus may not be issued where there is a plain and adequate remedy in the ordinary course of the law.

"In Chinn v. Trustees, ubi supra, Judge Scott, delivering the opinion of the Ohio Supreme Court, said:

"'The Code of Civil Procedure limits the time within which an action can be brought "upon a liability created by statute, other than a forfeiture or penalty," to six years. (Section 14.) This provision is found in title 2 of the Code, the object of which is to define and prescribe "the time of commencing civil actions." The civil action of the Code is a substitute for all such judicial proceedings as, prior thereto, were known either as actions at law or suits in equity. (Section 3.) By section 8, the limitations of this title are expressly confined to civil actions. But proceedings in mandamus were never regarded as an action at law, or a suit in equity, and are not therefore a civil action within the meaning of the Code. Mandamus is an extraordinary or supplementary remedy, which cannot be resorted to if the party has any adequate, specific remedy. The Code provides for and regulates this remedy, but does not recognize it as a civil action.'

"**This language is no less applicable to the Oklahoma Code. The proceeding in mandamus is not a civil action, and therefore not within the terms of the statute of limitations.**"

The syllabus of our own court in the Duke Case reads as follows:

"The statute of limitations does not run in favor of a municipal, or quasi municipal corporation, upon its outstanding obligations evidenced by warrants, until the corporation has provided a fund out of which payment of the same may be made."

I have obtained the briefs which were filed

in that case, and the late James Hepburn, who was city attorney of Guthrie at that time, urged in his brief as follows:

"It is contended by plaintiffs in error that mandamus is a civil action and subject to be barred by the statute of limitations, and that this action in mandamus, to compel the mayor and councilmen of the city of Guthrie to levy a tax to create a fund to pay these warrants, accrued on the 9th day of September, 1895, the day W. H. Gray, receiver, commenced his action in mandamus to compel the then mayor and councilmen of the city of Guthrie to levy this same tax for the payment of these same warrants. We contend, not only that this action in mandamus accrued on the 9th day of September, 1895, but that the holders of these warrants are estopped to deny that this action did then accrue, for the reason that the then holder of the warrants brought his action in mandamus on that day. And since this action accrued in 1895, and since it was not commenced until the 23rd day of July, 1903, we contend that it is barred by all of the provisions of the statute of limitations.

"We contend that the duty to levy this tax, which is imposed upon the plaintiffs in error, is a liability created by statute, and that the action should have been brought within three years from the time when it accrued.

"We also contend that since the action in mandamus, brought by Gray, receiver, was reversed on the 12th day of February, 1897, and afterwards dismissed by Turner & Kirkwood on the 28th day of June, 1901, and since this action was not commenced until the 23rd day of July, 1903, more than a year after such reversal, and more than a year after such dismissal, that this action is barred by the statute of limitations.

"While on the other hand the defendants in error contend that this is an action on the warrants described, and that the plaintiffs in error nor their predecessors not having at any time levied a tax to create a fund for their payment, and no fund having ever been provided, that therefore the statute of limitations never commenced to run against this action."

Messrs. Dale & Bierer, in their brief, state as follows:

"It is our contention that the city of Guthrie, having failed, through its municipal officers to levy a tax or to create a fund for the payment of the obligation, plaintiffs in error cannot maintain, as a defense, the statute of limitations."

It is apparent from those opposing views that it became necessary to determine the nature of a mandamus proceeding and the applicability of the statute of limitations to such an action.

It is urged as a reason for the refusal of the State Auditor to act that the money had been distributed and that no appropriation had been made to provide for the payment of the tax which it is admitted was collected and was void. In this connection it must be remembered that an application was made for the refund of this tax within a few months after the act in question became effective. It seems a highly technical step to advance that the statutes of limitation should be an effective bar because the state officials did not timely perform the official duties required of them by law. If there was no appropriation to take care of the refunding, then certainly the statute of limitations never commenced to run in favor of the State Auditor. See Duke v. Turner, supra; Board of Commissioners of Greer County v. Clark & Courts, 12 Okla. 197, 70 P. 206. If there has been no fund provided by which the obligation could be enforced, then certainly the State Auditor could not plead a statute of limitations without first showing that a fund had been provided. When the Legislature passed the act refunding the illegal tax which had been paid, this constituted a valid appropriation within the provision of the State Constitution that no money should be paid out of the treasury except in pursuance of appropriations made by law. No particular form of appropriation or technical words are necessary to find the plain intent, purpose, and meaning of a statute which authorizes an appropriation. See Commonwealth v. Ferries Co., 92 (Va.) S. E. 804. However, this statute in question provided for the refund to be deducted from moneys payable to the subdivisions which had received the erroneous payments. The taxes in question were exempt by Acts of Congress (Act of June 28, 1898; 30 Stat. L. 495, and Act of June 16, 1906, 34 Stat. L. 267, as well as by the Constitution of Oklahoma, art. 1, sec. 3; art. 10, sec. 6). See Carpenter v. Shaw, 280 U. S. 363, 74 L. Ed. 478.

It is my view that the refunding act entirely eliminated the necessity, if any, of filing a protest at the time of payment on this exempt property, and it was not necessary to institute a suit for the recovery of the void tax under section 9971, C. O. S. 1921. See Carpenter v. Shaw, supra. The refunding act afforded complete independent procedural relief, without regard to section 9971, supra.

This is not a civil action to recover money within the meaning of our Code of Civil

Procedure, and the limitation statute, section 101, O. S. 1931, is not applicable under the rule announced in Duke v. Turner, supra.

Mandamus is not demandable as a matter of right. It is the proper remedy to compel a public officer to perform his official duties imposed upon him by law. It is a remedial process and the issuance of the writ rests largely within the sound discretion of the court. There can be no judicial discretion if a statute of limitation can be effectively imposed as a bar. Judicial discretion then must fail.

In Ferris on Extraordinary Legal Remedies it is said in chapter 16, dealing with mandamus, as follows:

"Mandamus is generally regarded as not embraced within statutes of limitations applicable to ordinary actions, but as subject to the equitable doctrine of laches. It seems well settled that the reason mandamus will not be issued unless asked for within a reasonable time after the wrong happened of which relator complains, is not because of any statute of limitations, but because courts have discretion in issuing the writ, and in the exercise of that discretion will refuse mandamus if the claim has been allowed to become stale without any excuse shown for the delay, and because the relator has apparently acquiesced in the wrong complained of."

It is proper for the court in granting or refusing relief to take into consideration local statutes of limitations in analogous civil actions, the question of long and unreasonable delay in the commencement of the action, the prejudice, if any, resulting from such delay, and all attendant facts and circumstances.

In the case of Duncan Townsite Co. v. Franklin K. Lane, 245 U. S. 308, 62 L. Ed. 309, a petition for mandamus was brought in the Supreme Court of the District of Columbia to compel the Secretary of the Interior to restore a certain name to rolls under the Choctaw-Chickasaw Agreement of July 1, 1902. Mr. Justice Brandeis, speaking for the Supreme Court of the United States, on December 10, 1917, said:

"Mandamus is an extraordinary remedial process which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion. It issues to remedy a wrong, not to promote one; to compel the performance of a duty which ought to be performed, not to direct an act which will work a public or private mischief, or will be within the strict letter of the law, but in disregard of its spirit. Although classed as a legal rem-

edy, its issuance is largely controlled by equitable principles."

In the case of United States ex rel. William F. Arant v. Franklin K. Lane, 63 L. Ed. 652, Mr. Justice Clark, speaking for the Supreme Court of the United States, said:

"This court has lately said that while mandamus is classed as a legal remedy, it is a remedial process which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion and upon equitable principles. Duncan Townsite v. Lane, 245 U. S. 308, 62 L. Ed. 309, 38 Sup. Ct. Rep. 99. It is an extraordinary remedy, which will not be allowed in cases of doubtful right (Life & Fire Ins. Co. v. Wilson, 8 Pet. 291, 302, 8 L. Ed. 949, 953), and it is generally regarded as not embraced within statutes of limitation applicable to ordinary actions, but as subject to the equitable doctrine of laches. Chapman v. Douglas County, 107 U. S. 348, 355, 27 L. Ed. 378, 381, 2 Sup. Ct. Rep. 62; Duke v. Turner, 204 U. S. 623, 628, 51 L. Ed. 652, 654, 27 Sup. Ct. Rep. 316, 9 Ann. Cas. 842."

The majority opinion quotes with approval from High on Extraordinary Legal Remedies, section 30b. Mr. Justice Day, in the Duke Case, supra, quoted this same section and it is observed that the Supreme Court of the United States disapproved said section.

This is not a suit against the state. See State ex rel. New Orleans Canal & Bkg. Co. v. Heard, 47 La. Ann. 1679, 18 So. 746, 47 L. R. A. 512; Ehrlich v. Jennings, 78 S. C. 269, 58 S. E. 922, 13 Ann. Cas. 1166; State ex rel. Robert Mitchell Furniture Co. v. Toole, 26 Mont. 22, 66 P. 496, 55 L. R. A. 644; Nougues v. Douglass, 7 Cal. 65; and Choctaw Pressed Brick Co. v. Townsend, 108 Okla. 235, 236 P. 46.

It seems to me that the record in this case shows that the Board of Equalization, on October 1, 1935, as shown by its order, declined to consider or pass upon the claim of plaintiff, after plaintiff had timely presented his claim for refund on June 29, 1925; that subsequently on April 28, 1930, said board, whether constituted by the same personnel, which is immaterial, in the further consideration of said claim made a finding that no action had been taken by said Board of Equalization on said claim, and the matter was then referred to the Attorney General for an opinion as to whether said claim should be approved or disallowed. When plaintiff had received no determination of his claim after the further consideration of the same by the board on April 28, 1930, the

present action in mandamus was instituted on December 4, 1930.

In the Duke Case, supra, this court said:

"The statute of limitations is what is known in law 'as a statute of repose. * * * Now, can the officers of the city, when steps are taken which are necessary preliminaries to the collection of these warrants, be heard to take advantage of their own neglect of duty, by saying that because we have not performed the duty as the law required of us and made the necessary levy to provide the fund for the payment of these warrants, that consequently, on account of our neglect, the statute of limitations has run against the holders of these warrants so as to prevent their collection? We think this case comes clearly within the decision of this court in the Greer County Case (citing Greer County v. Clark, 12 Okla. 197, 70 P. 206; Robertson v. Blaine County, 90 Fed. 63, 32 C. C. A. 512, 47 L. R. A. 459; Hubbell v. South Hutchinson, 64 Kan. 645, 68 P. 52.). * * * From the foregoing it will be seen that the reason assigned by the courts in refusing to permit the statute of limitations to be pleaded as a bar to recovery, in cases of this character, arises out of the fact that the defendants were, under the law, required to do some affirmative act; that is, to levy a tax creating a fund for the payment of indebtedness and the taking up of warrants, and if the warrant holder failed to present his warrant and secure the money thereon, the statute of limitations could be successfully interposed; but so long as there remained, under the law, some act to be performed by the municipality, such municipality has not performed its duty under the law, and the courts will not and ought not to permit them to interpose their failure to act as by law required as a defense to the payment of a just obligation."

It is my theory that the Duke Case, supra, should control the instant proceeding; that under the facts and circumstances, without thought of federal restrictions, there has been no laches or unreasonable delay on the part of the plaintiff in presenting his claim for refund under the statutory provisions of chapter 20, Session Laws of 1925; that the delay has been occasioned by the negligence of the state officials to perform official duties as required by the refunding law in question; that it would be just and fair that the writ of mandamus should issue.

For the foregoing reasons, I respectfully dissent to the views announced in the majority opinion.

I am authorized to announce that Mr. Vice Chief Justice OSBORN, Mr. Justice BUSBY, and Mr. Justice CORN concur in this dissent.